SABO v MONROE TOWNSHIP

) Docket No. 54953. Argued March 14, 1974 (Calendar No. 16).—Decided August 19, 1975.

Arthur E. Sabo, Clarence R. Petree, and David Phipps brought an action against Monroe Township for declaratory judgment and for an injunction to restrain defendant from interfering with plaintiffs' use of certain property. Plaintiffs' property is zoned to allow single-family, two-family, and multiple dwellings and, with the approval of the Board of Appeals, certain other uses. The township board rejected plaintiffs' request to rezone the property to permit construction of a mobile-home park. The Monroe Circuit Court, Robert W. McIntyre, J., ruled that the present zoning is both rational and feasible, and dismissed the complaint. The Court of Appeals, V. J. Brennan, P. J., and Bronson, J. (O'Hara, J., concurring in result), reversed, finding that the property is so devoid of feasibility for use as zoned that the ordinance is confiscatory (Docket No. 12799). Defendant appeals. *Held:* The decision of the Court of Appeals is affirmed.

Levin, J., with whom T. G. Kavanagh, C. J., and J. W. Fitzgerald, J., concurred, wrote that:

1. In seeking a change in the zoned use of their property, plaintiffs sought an administrative, not a legislative, determination. The standard on review should not be the reasonableness of the use permitted, but the reasonableness of the use proposed. Even if present zoning is not unreasonable or confiscatory, a proposed use should be permitted if reasonable under all the circumstances.

2. The record establishes that the proposed use is reasonable, and it should be allowed.

3. The failure of a planning commission to adopt a master plan does not per se invalidate a zoning ordinance. The "plan"

REFERENCES FOR POINTS IN HEADNOTES
[1, 5–8] 58 Am Jur, Zoning § 27.
[2–4, 15] 58 Am Jur, Zoning § 169 *et seq.*
[9–11, 14, 16] 58 Am Jur, Zoning § 14 *et seq.*
[12] 58 Am Jur, Zoning § 140.
[13] 58 Am Jur, Zoning § 34.

required for zoning purposes is not dependent on the adoption of a master plan and may properly emanate from the zoning ordinance or map itself. Zoning enabling acts and zoning ordinances were enacted before legislation authorizing planning commissions and the adoption of master plans. Invalidation of otherwise valid zoning regulations solely because they were enacted in the period between creation of a planning commission and actual adoption of a master plan would result in wholesale invalidation of zoning regulations leaving an absolute void of any land use regulation.

Williams, J., also wrote to affirm the decision of the Court of Appeals, but for different reasons. He would hold that:

1. Both the township planning act and the Township Rural Zoning Act require that a zoning ordinance be based on a master plan, and the master plan must be something other than the ordinance itself. Zoning ordinances not based on a master plan should be treated as invalid, not merely as carrying a weakened presumption of reasonableness. This rule, however, should be given prospective effect and not be applied in the instant case.

2. The zoning is confiscatory as applied to the plaintiffs' land, because while the land would have some value if used as zoned, it would require such extensive changes at tremendous cost as to virtually transform the nature of the property.

3. The plaintiffs have no standing to raise the question whether that part of the ordinance permitting mobile-home parks in commercial zones upon approval by the board of appeals is spot zoning, because their property is not in a commercial zone. They have not raised the issue of exclusion.

M. S. Coleman, J., dissented. She concurred with Levin, J., that failure of a planning commission to adopt a master plan does not per se invalidate all zoning ordinances. She did not agree that a proposed use which is reasonable must be allowed regardless of zoning ordinances, and would reach the opposite result in this case, reversing the Court of Appeals.

46 Mich App 344; 208 NW2d 57 (1973) affirmed.

OPINION OF THE COURT

1. ZONING—TOWNSHIPS—MASTER PLANS—ORDINANCES.

   The failure of a township planning commission to adopt a master plan does not per se invalidate the township zoning ordinances.

2. ZONING—ORDINANCES—AMENDMENT—QUESTION ON REVIEW.

   A change in zoning is generally an administrative, not a legislative, determination, and the question on review should not be

whether a permitted use is reasonable, but whether a proposed use is reasonable; even if present zoning is not unreasonable or confiscatory, a proposed use should be permitted if reasonable under all the circumstances.

3. Zoning—Ordinances—Amendment—Administrative Law—Question on Review.

Proofs now adduced in circuit court regarding a change in zoning should be presented administratively and judicial review should be restricted to whether the record evidence supports the administrative finding on the issue whether the proposed use is reasonable.

4. Zoning—Ordinances—Amendment—Reasonableness—Mobile-Home Parks.

A proposed use of land for a mobile-home park in a district zoned for residential uses should be allowed where the record establishes that the proposed use is reasonable.

5. Zoning—Master Plans—Ordinances—Map.

The "plan" required for zoning purposes under the Township Rural Zoning Act is not dependent on the adoption of a master plan and may properly emanate from a zoning ordinance or map itself (MCLA 125.273).

6. Zoning—Ordinances—Validity—Master Plan.

Zoning enabling acts and zoning ordinances were enacted before legislation authorizing planning commissions and the adoption of master plans, and where the creation of a township planning commission is permissive to require that any township that establishes a planning commission immediately adopt a master plan or face invalidation of its previously enacted zoning ordinances would be a strong deterrent to the creation of the planning commission, the initial step in long-range planning, and would result in wholesale invalidation of zoning regulations leaving an absolute void of any land use regulation (MCLA 125.323).

Separate Opinion

Williams, J.

7. Zoning—Townships—Master Plan—Statutes.

*The statutes regulating township zoning and planning require that the township have a master plan, before zoning, on which the zoning ordinance is based, and the ordinance cannot be the same thing as the plan (MCLA 125.273, 125.321, 125.326).*

8. Zoning—Master Plan—Ordinances—Distinction.

*A master plan for zoning is a long-term general outline of projected development, while the zoning ordinance is but one of the many tools which may be used to implement the plan.*

9. Zoning—Ordinances—Validity—Presumptions.

*One reason for according a presumption of reasonableness to a community zoning ordinance is that the ordinance is based on sound planning, and the ordinance itself may not be considered as evidence that zoning determinations are reasonable if there is no master plan available.*

10. Zoning—Ordinances—Validity.

*A total lack of any of the planning required by statute before the adoption of a zoning ordinance does more than merely weaken the presumption of reasonableness of a properly adopted ordinance, as is the case where there is an existing, but unadopted, master plan; a zoning ordinance adopted without the plan required by statute is invalid.*

11. Zoning—Ordinances—Validity—Confiscation—Standard.

*A trial court, in finding that a zoning ordinance was not confiscatory as to plaintiffs' property, used an inappropriate standard for determining confiscation when it found that plaintiffs had not demonstrated by a preponderance of the proofs that continued zoning of premises as they were was detrimental to health, safety, and welfare in the township.*

12. Zoning—Ordinances—Confiscation.

*A zoning ordinance amounts to confiscation as applied to plaintiffs' property where it would require such extensive changes at tremendous cost as to virtually transform the nature of the property.*

13. Zoning—Ordinances—Validity—Spot Zoning—Standing.

*Plaintiff property owners desiring to use their land for a mobile-home park have no standing to challenge as spot zoning the validity of an ordinance which has no separate classification for mobile homes but permits them only in districts zoned commercial upon approval by the board of appeals on a case-by-case basis, where plaintiffs' land is not in a commercial zone.*

14. Zoning—Ordinances—Validity—Land Use.

*Plaintiff property owners desiring to use their land for a mobile-home park are not inhibited in their use by a zoning ordinance which is invalid because without statutory authority for failure to be based on a master plan.*

SEPARATE OPINION

M. S. COLEMAN, J.

See Headnotes 1, 5, and 6.

15. ZONING—ORDINANCES—AMENDMENT—REASONABLENESS.

The holding that any request for rezoning which is "reasonable" must be allowed regardless of zoning ordinances affords neither a workable standard nor any furtherance of the legislative objectives in zoning enactments.

16. ZONING—SUPREME COURT—PROCEDURES—STANDARDS—ORDI-
NANCES.

The Supreme Court's role in a zoning case is to ascertain that correct procedures are followed and that appropriate standards are employed; the Court does not sit as a superzoning board nor to impose its social policies upon local communities and it should not be so disrespectful of properly enacted local ordinances that it undermines community attempts to establish commonality of health, safety, economic, ecological, educational and esthetic interests.

*Ready, Sullivan & Ready,* for plaintiffs.

*Harry A. Lockwood,* for defendant.

Amicus Curiae: *Schlussel, Lifton, Simon, Rands & Kaufman* (by *Joseph F. Galvin),* for Mobile Home Communities Council.

LEVIN, J. In each of the three cases which, although separately submitted, are being decided today, the plaintiffs seek to use land zoned single family residence *(Sabo* and *Nickola)* or agricultural *(Smookler)* to construct a mobile-home park.

I write separately because I do not agree, in *Nickola*[1] and *Smookler,*[2] that on proof that a community has excluded a legitimate use, here mobile-home parks, it necessarily becomes obliged to grant a request for rezoning to permit that use.

[1] *Nickola v Grand Blanc Twp,* 394 Mich 589; 232 NW2d 604 (1975).
[2] *Smookler v Wheatfield Twp,* 394 Mich 574; 232 NW2d 616 (1975).

The land sought to be rezoned may not be suitable for development for the excluded use. In *Sabo* I do not agree that the failure of a planning commission to adopt a master plan per se invalidates all zoning ordinances.[3]

# I

Even if present zoning is not unreasonable[4] or confiscatory,[5] a proposed use should be permitted if

[3] In *Nickola* and *Smookler,* Justice WILLIAMS discusses the master plan issue, but would grant relief on the basis of exclusion.

[4] In *Sabo,* in light of the predominant surrounding single-family uses and the failure of the record to establish impracticability of further single-family development of the plaintiffs' property or of the vacant land surrounding plaintiffs' property we could not say that the plaintiffs have demonstrated that the present RB zoning of their property is unreasonable.

[5] In *Sabo,* the Court of Appeals found that "the construction difficulties created by the surrounding uses for the development of either single or multiple residences and nonexistent market for the construction of multiple units indicates that the subject parcel is unsuitable for either of the remaining uses permitted by defendant's ordinance", and held the property is "so devoid of feasibility for use as zoned" that the restriction was confiscatory. *Sabo v Monroe Twp,* 46 Mich App 344, 350; 208 NW2d 57 (1973).

While the quarry has adversely affected residential development, it has neither prevented all such development nor caused residents to abandon their homes. There are moderate-priced homes to the northwest, a higher-priced development to the southwest, a subdivision described as "upper middle class" directly west of the quarry (across Dixie Highway), and additional residential areas north of the quarry.

Similarly, despite the rock formation underlying much of the township, including plaintiffs' property, subdivisions have been developed with single-family residences. The testimony tends to show that sewer and water mains have been and can be installed and that the additional cost would not substantially increase the cost of a dwelling unit.

Plaintiffs introduced evidence that there was not "very much" residential development in the "very immediate" area during the last ten years; that "at the present time the demand and the market does not warrant" the investment required to construct multiple dwellings and that a 100-unit multiple development operated by the plaintiffs located in the City of Monroe has a 10% vacancy factor. That evidence is not so overwhelmingly persuasive as to leave us with a definite and firm conviction that the trial judge erred in finding that plaintiffs' property could feasibly be developed for single-family or multiple uses.

The immediate area may not have been ripe for development

reasonable under all the circumstances. *Kropf v Sterling Heights,* 391 Mich 139, 164 ff.; 215 NW2d 179 (1974) (concurring opinion).

We would require that the proofs now adduced in circuit court be presented administratively and restrict judicial review to whether the record evidence supports the administrative finding on the issue whether the proposed use is reasonable. *Kropf v Sterling Heights, supra* (concurring opinion). However, it is the present practice to present the proofs in circuit court and for a reviewing court to make its own independent examination and analysis of the record. *Kropf v Sterling Heights, supra* (majority opinion).

In each of these cases the Court of Appeals held that the proposed use should be allowed. The record in each establishes that the proposed use (which happens to be a partially or totally excluded use) is reasonable.[6] On that ground we join in affirming the decision of the Court of Appeals.

---

during the last ten years; the record does not establish that the area cannot be developed now or in the near future for single-family use. Nor does the unelaborated testimony concerning current market conditions as it affects investment in multiple development inexorably lead to the conclusion that plaintiffs' property cannot presently or in the near future be so developed. For all that appears on the record, the conditions complained of are temporary.

A different result might be in order if the record established that by reason of improbability of substantial reduction in present high costs of construction and financing and of substantial improvement in demand for conventional housing at this location, a competent and prudent developer of land, production or custom homes or multiple dwellings would not, and in the near future is not likely to be willing to, make the investment required to bring into reality the planned use of this property.

[6] The facts are fully stated in the opinions written by Justice WILLIAMS. In each case construction of a mobile-home park would be "harmonious, compatible, appropriate" and would not "impinge unreasonably on the value or use of nearby properties or impair sound communal development". *Kropf v Sterling Heights* 391 Mich 139; 215 NW2d 179 (1974) (concurring opinion).

## II

In this case of *Sabo,* my colleague would hold the Monroe Township Zoning Ordinance invalid because the "community has neither adopted such a [master] plan, nor even taken the first steps to produce one".

The Township Rural Zoning Act does require that "provisions of the zoning ordinance shall be based upon a plan". MCLA 125.273; MSA 5.2963(3). The township planning act provides that the township "planning commission shall make and adopt a basic plan as a guide for the development of unincorporated portions of the township". MCLA 125.326; MSA 5.2963(106).

While most zoning enabling acts require that zoning be in accordance with a "plan" or more commonly "in accordance with a comprehensive plan" (from the Standard State Zoning Enabling Act), "the 'comprehensive plan' with which zoning was to accord has hardly ever been identified with the 'master plan' established by the Planning Act". Hagman, Urban Planning and Land Development Control Law, § 24, p 55.

"It is thus clear that the 'comprehensive plan' of the zoning statute is not identical with the 'master plan' of the Planning Act and need not meet the formal requirements of a master plan." *Kozesnik v Montgomery Twp,* 24 NJ 154, 166; 131 A2d 1, 7 (1957).

The "plan" limitation in the zoning enabling act requires that the community zone in a pre-established and comprehensive manner rather than on an ad hoc basis. The "plan" required for zoning purposes is not dependent on the adoption of a

master plan and may properly emanate from the zoning ordinance or map itself.[7]

In Michigan, and generally elsewhere, zoning enabling acts and zoning ordinances were enacted before legislation authorizing planning commissions and adoption of master plans.

"As a result, there appears to have been a judicial tendency to interpret the statutory directive that zoning ordinances shall be 'in accordance with a comprehensive plan' as meaning nothing more than that zon-

---

[7] "Without venturing an exact definition, it may be said for present purposes that 'plan' connotes an integrated product of a rational process and 'comprehensive' requires something beyond a piecemeal approach, both to be revealed by the ordinance considered in relation to the physical facts and the purposes authorized by *R.S.* 40:55-32 [N.J.S.A.]. Such being the requirements of a comprehensive plan, no reason is perceived why we should infer the Legislature intended by necessary implication that the comprehensive plan be portrayed in some physical form outside the ordinance itself. A plan may readily be revealed in an end-product—here the zoning ordinance—and no more is required by the statute." *Kozesnik v Montgomery Twp,* 24 NJ 154, 166; 131 A2d 1, 7–8 (1957).

Similarly, see *Udell v Haas,* 21 NY2d 463, 469–472; 288 NYS2d 888, 894–896 (1968); *Key Realty Co Zoning Case,* 408 Pa 98, 102; 182 A2d 187, 189 (1962); *Strandberg v Kansas City,* 415 SW2d 737, 744 (Mo, 1967); *Summ v Zoning Commission of Town of Ridgefield,* 150 Conn 79, 87; 186 A2d 160, 164–165 (1962); *City of Medina v Rose,* 69 Wash 2d 448; 418 P2d 462 (1966).

An explanatory note to § 3 of the Standard State Zoning Enabling Act requiring that zoning be "in accordance with a comprehensive plan" states, "[t]his [requirement] will prevent haphazard or piecemeal zoning".

"The absence of a land use plan other than the plan which is implicit in the [zoning] ordinance has been held not to invalidate a zoning ordinance. Indeed, where a community has developed and adopted a master plan, the legislative body is not required to follow it. A variation from the master plan to permit a use which, in the reasoned view of the legislative body, will be beneficial to the public welfare is consistent with the comprehensive plan." 1 Anderson, American Law of Zoning, § 5.02, p 236.

The township-planning act is specific that while the planning commission "shall make and adopt a basic plan", the words " 'basic plan' means master plan, general development plan, guide plan, *or* the plan referred to in [the township zoning enabling act], being the basis on which the zoning plan is developed". MCLA 125.321; MSA 5.2963(101). (Emphasis supplied.)

ing ordinances shall be comprehensive—that is to say, uniform and broad in scope of coverage. The lack of a master plan is deemed irrelevant to the validity of zoning measures. And this is hardly surprising. For when one considers the usual chronology of the legislative enactment of zoning and planning enabling legislation in any state, the indefinite statutory language, and the far greater prevalence of zoning than planning at the municipal level, it *would strain judicial reasoning to the breaking point to imply a legislative intent that zoning ordinances be considered authorized only if drafted in accordance with a previously enunciated master plan.*" Haar, *In Accordance With a Comprehensive Plan,* 68 Harv L Rev 1154, 1157 (1955). (Emphasis supplied.)

With the exception of states where the zoning enabling act specifically provides that zoning shall be "in accordance with the master plan for land use",[8] no case has been found requiring adoption of a master plan as a precondition to the enactment of a valid zoning ordinance. The authorities are uniformly to the contrary.[9]

There is no statutory requirement that a township establish a planning commission; the statute authorizing the creation of township planning commissions is permissive. MCLA 125.323; MSA 5.2963(103). Requiring that any township that does establish a planning commission immediately adopt a master plan or otherwise face invalidation

---

[8] *See, e.g.,* Nev Comp Laws, § 5063.12 (Supp, 1941).

[9] *See Angermeier v Sea Girt,* 27 NJ 298, 309; 142 A2d 624, 630 (1958); *Higginbotham v City of the Village,* 361 P2d 191 (Okla, 1961); *Gayland v Salt Lake County,* 11 Utah 2d 307, 309; 358 P2d 633, 635 (1961); *Citizen's Association of Georgetown, Inc v Zoning Commission of the District of Columbia,* 155 US App DC 233, 237–238; 477 F2d 402, 406–407 (1973); *Come v Chancy,* 289 Ala 555, 563; 269 So 2d 88, 96 (1972); *Shelton v Bellevue,* 73 Wash 2d 28, 35–38; 435 P2d 949, 953–955 (1968). Cf. *Raabe v City of Walker,* 383 Mich 165, 178; 174 NW2d 789 (1970): "The absence of a formally adopted municipal plan, whether mandated by statute or not, does not of course invalidate municipal zoning or rezoning."

of its previously enacted zoning ordinances would serve as a strong deterrent to taking the initial step toward long-range planning—the creation of a planning commission.

Substantial time may be required to develop and adopt a sound master plan. "If no zoning regulation were possible until the master plan was completed and adopted, in counties where fast growth was occurring, it might do so in an incongruous and uncontrolled manner which the planning commission would find it difficult or perhaps impossible to keep abreast of, or to devise a master plan that would be of much benefit; and thus the whole purpose of effective zoning might be frustrated." *Gayland v Salt Lake County,* 11 Utah 2d 307, 310; 358 P2d 633, 635 (1961).

Invalidation of otherwise valid zoning regulations solely because they were enacted in the period between creation of a planning commission and actual adoption of a master plan would result in wholesale invalidation of zoning regulations leaving an absolute void of any land use regulation.

We concur in affirmance.

T. G. KAVANAGH, C. J., and J. W. FITZGERALD, J., concurred with LEVIN, J.

WILLIAMS, J. *(to reverse the trial court).* This is yet another zoning case, but with some aspects not developed in *Kropf v Sterling Heights.* [1]

Three issues are raised: absence of a legislatively adopted master plan and of any preliminary planning looking to a master plan, confiscation, and spot zoning.

---

[1] *Kropf v Sterling Heights,* 391 Mich 139, 158, 162; 215 NW2d 179 (1974).

The statutes of this state clearly contemplate and require that a township base its zoning ordinance on a legally adopted master or basic plan. Where a community has neither adopted such a plan, nor even taken the first steps to produce one, we will, in the future, go beyond the rule we adopted in *Biske v City of Troy,*[2] and find the zoning ordinance invalid per se. However, as this ruling is prospective only, it does not affect the validity of the Monroe Township Zoning Ordinance.

As to confiscation, the *Kropf* rule, "the ordinance comes to us clothed with every presumption of validity" "that * * * [a] reasonable governmental interest [is] being advanced by the present zoning classification" is here recognized but is not here applicable. Rather the second *Kropf* rule "that an ordinance may be unreasonable because of its purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use in the area in question" governs the issue of confiscation. We hold that "it is the burden of the party attacking to prove" "that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purpose to which it is reasonably adapted". 391 Mich 139, 162–163. On review of the opinions of the trial court and the Court of Appeals, we find a close question of fact exists which we resolve in plaintiffs' favor.

As to spot zoning, the zoning ordinance provided for mobile-home parks within districts zoned commercial but only on approval of the Board of Appeals. Plaintiffs, however, not being owners in an area zoned commercial, lack standing to challenge the validity of such an ordinance.

---

[2] 381 Mich 611; 166 NW2d 453 (1969). We held that an unadopted master plan would not be given the evidentiary weight of reasonableness of an adopted one.

## I — FACTS

Plaintiffs' property, an irregular, but mainly rectangular parcel of approximately 86 acres in Monroe Township, is currently zoned for residential uses. Although having a basically interior location, at two different points it abuts the main roads of Hull and Dunbar.

On the north, across Dunbar Road is a stone quarry in which heavy machinery is used and where blasting occurs frequently. Testimony at trial indicated that occasionally pieces of rock have been hurled by this blasting into a neighboring business area.[3]

On the east, part of the parcel bounds on Hull Road. Directly east of that is an auto salvage yard. Still further east are the southbound tracks of the New York Central Railroad.

Most of the southern portion of the area is currently farm land, except for the southwest corner, which contains housing subdivisions.

On the west, the general area is bounded by South Dixie Highway where, in strips not exceeding 600 feet deep on both sides, is commercial development such as restaurants and auto dealerships.

About 75% of the whole area, including plaintiffs' parcel, is zoned RB, a classification permitting single-family and multiple residential units. Most remaining land is zoned commercial. The map of Existing Land Use exhibit submitted by defendants indicates that the area within approximately 1 mile of the center of plaintiffs' property is roughly 75–80% vacant land. Figure 1. Plaintiffs' property is now vacant, too, although it has

---

[3] The trial court found that this did not occur so frequently as to justify, without more, a change in the zoning.

been used at various times for agriculture and as a commercial nursery.

The township has never hired a professional planner and has never produced a master plan. It does, however, have a zoning ordinance which permits mobile-home parks in commercial zones upon approval by the Board of Appeals. There is no district zoned specifically for mobile-home parks, but two such parks already exist. Plaintiffs seek to have their land rezoned commercial in order to construct a mobile-home park on the site.

At first the Township Board did not, and then it did, tentatively approve the zoning change. So did the Planning Commission. However, following a public meeting, plaintiffs' petition was finally rejected by the Township Board. The next step was a suit filed in Monroe Circuit Court.

Plaintiffs argued that retaining the present residential zoning was confiscatory as to their property. Stone-rock formation made construction of sewer and water lines for single and multiple units impractical, while proximity to the quarry blasting made it difficult to construct structures which could withstand the vibration. Mobile homes, because of their flexible construction, could withstand the shaking, and did not require pipelines as deep as conventional residential units. There was no market for multiple units, while there was a great, unfulfilled need for lower-cost housing, and the two existing mobile-home parks in the township had waiting lists.

Because of poor drainage and the presence of nursery stock, plaintiffs felt that, without extensive changes, the land could not be used for the typical crops normally grown in Monroe County. Therefore, the only practical use for the property, say plaintiffs, would be for a mobile-home park.

They also attempted to show that a mobile-home park would be good planning. Proposed density of 5.9 units per gross acre would be the same as for single units in the same area. An expert testified that a mobile-home park would be a buffer between other land uses. Additionally, a mobile-home park is already located in an area of similar land uses.

Plaintiffs also pointed out that the township lacks a master plan and has never hired a professional planner. Although there is a zoning ordinance, the only way mobile-home parks may be located in the township is by special permission of the Board of Appeals, which, plaintiffs contend, is spot zoning, an invalid use of the zoning power.

Defendant argued that building a mobile-home park would adversely affect its planning, as evidenced by the zoning ordinance. The township did not object to mobile-home parks per se, but found the combination of factors, including the limited access to main roads, proximity to single-family residences and the largely residential nature of the neighborhood, as well as the irregular shape of the land, militated against a mobile-home park in this particular location. The private roads characteristic of mobile-home parks cause serious problems of access, maintenance, and snow removal, and this, combined with a failure to provide connecting streets with the rest of the area, and anticipated increase in population density, would overburden facilities and be contrary to good planning.

The ordinance, defendant contends, is not confiscatory. The poor market for single-family or multiple-family units was not exclusive to the subject property, but was a presently-existing market condition affecting the whole area. Apparently, de-

fendant points out, both the quarry blasting and nature of the soil have not deterred others from building single-family residences in the general vicinity of the property.

Although defendant did not disagree that a new tile and pump system at a probable cost of $200 per acre would be necessary before the land could be used for agriculture, sale of the nursery stock could defray some of the expenses of removal. Additionally, it was suggested that the land could be used for pick-your-own type crops such as strawberries if plaintiffs found they could not profitably grow such staples as wheat and corn.

The township defends its zoning policies by pointing out that it already has two mobile-home parks, including one with 260 units which has room to expand another 315 spaces. There is no single mobile-home park district, because to restrict such parks to one place, defendant contends, would be to unduly limit the growth of mobile-home parks.

A township, it says, does not need a master plan, because a zoning ordinance satisfies the statutory requirement of a basic plan. Much thought went into the zoning ordinance, it explains, which has been revised as township conditions changed.

The trial court found that there was no confiscation, and that "the property in question can be used as agricultural property, profitably, and that it can be developed as a site for single or multiple dwellings". Citing *Biske v City of Troy,* 381 Mich 611; 166 NW2d 453 (1969), as authority, the court found that the effect of a master plan which is only informally adopted is that it is accorded less evidentiary value than one which has been adopted according to statute. Therefore the trial court held the lack of a master plan by itself was

not sufficient to invalidate the township ordinance. The trial court found the zoning ordinance reasonable as to the subject property.

The Court of Appeals reversed,[4] finding that construction and market difficulties combined to make the property so devoid of feasibility for use as zoned that the ordinance was deemed confiscatory. The Court did not consider the effect of the lack of a master plan or the alleged spot zoning scheme. 46 Mich App 344; 208 NW2d 57 (1973).

## II —Is THE TOWNSHIP ZONING ORDINANCE VOID AS NOT BASED ON A MASTER PLAN?

Plaintiffs contend that the township ordinance is not entitled to a presumption of reasonableness because a master plan had not been adopted and the township had never retained the services of a professional planner.

Defendant township does not dispute these facts but maintains, on the other hand, that while cities may be required to adopt a master plan, townships need only consider a basic plan. It argues that a basic plan may be the zoning ordinance itself, and therefore failure to adopt a master plan has no bearing on the presumed validity and reasonableness of a township zoning ordinance.[5]

---

[4] The Court of Appeals also held that a township has the right to impose greater restrictions on mobile-home parks than in the trailer coach park act in order to protect the health, safety and welfare of the community. Judge O'HARA concurred in the result, but declined to pass upon the question of whether the trailer coach park act preempts all regulation of mobile-home parks because the issue was not raised below.

[5] Defendant urges in its brief:

"The Township Planning Act, Act 168 of 1959, only states that a 'Basic Plan' need be considered and this may be the plan referred to in Act 184 of 1943 which is the Township Rural Zoning Act, MSA 5.2963(1)."

It should be noted that defendant township offers no evidence of what basic plan Monroe Township considered. Instead, it relies on the

This is not the law.

There are two statutes regulating township zoning: the township planning act, MCLA 125.321 *et seq.;* MSA 5.2963(101) *et seq.,* and the Township Rural Zoning Act, MCLA 125.271 *et seq.;* MSA 5.2963(1) *et seq.* Monroe Township has elected to come under the township planning act, which very specifically requires a plan. However, since Monroe Township could withdraw from the township planning act and proceed under the Township Rural Zoning Act, this opinion considers the requirements of that act also. We conclude that the Township Rural Zoning Act also requires that zoning be based on a plan. In other words, a township cannot legally zone until it has developed a plan.

## A. *Township Zoning Requires A Master Plan*

The township planning act requires: "[t]he provisions of the zoning ordinance shall be based upon a plan", MCLA 125.273; MSA 5.2963(3); "[t]he planning commission shall make and adopt a basic plan as a guide for the development of unincorporated portions of the township", MCLA 125.326; MSA 5.2963(106); and the plan should provide a basis for the "future development of the township".[6]

---

actions of its zoning commission and the existence of interim, adopted, and revised adopted ordinances, apparently arguing that plan and ordinance are identical.

[6] "(1) The basic plan shall include maps, plats, charts and descriptive, explanatory and other related matter and shall show the planning commission's recommendations for the physical development of the unincorporated area of the township.

"(2) The basic plan shall include those of the following subjects which reasonably can be considered as pertinent to the future development of the township:

"(a) A land use plan and program, in part consisting of a classification and allocation of land for agriculture, residence, commerce,

Furthermore, MCLA 125.321; MSA 5.2963(101) provides:

"Sec. 1. As used in this act:

"(1) 'Basic plan' means master plan, general development plan, guide plan, or the plan referred to in Act No. 184 of the Public Acts of 1943, as amended, being sections 125.271 to 125.301 of the Compiled Laws of 1948, *being the basis on which the zoning plan is developed."* (Emphasis added.)

The statute also sets out procedures for adoption of the plan or any parts thereof, including provisions for public hearings. MCLA 125.328; MSA 5.2963(108); MCLA 125.329; MSA 5.2963(109).

However, even where the township does not come under the planning act,[7] the mandate to plan applies just as strongly to townships which are under the 1943 Township Rural Zoning Act, MCLA 125.271 *et seq.;* MSA 5.2963(1) *et seq.* To better illustrate the pervasiveness of the legislative commitment to planning and the interrelationship of Michigan zoning and planning, it is useful to examine the zoning act.

## B. Township Rural Zoning Act

The Township Rural Zoning Act provides that:

industry, recreation, ways and grounds, public buildings, schools, soil conservation, forest, wild life refuges and other uses and purposes.

"(b) The general location, character and extent of streets, roads, highways, railroads, bridges, waterways and water front developments; flood prevention works, drainage, sanitary sewers and water supply systems, works for preventing pollution and works for maintaining water levels; and public utilities and structures.

"(c) Recommendations as to the general character, extent and layout for the development or rehabilitation of blighted districts and slum areas; and the removal, relocation, widening, narrowing, vacating, abandonment, changes or use or extension of ways, grounds, open spaces, buildings, utilities or other facilities.

"(d) Recommendations for implementing any of its proposals." MCLA 125.327; MSA 5.2963(107).

[7] The planning act is the applicable statute in the instant case.

"The township board of any organized township in the state of Michigan *may* provide by ordinance for the establishment of zoning districts * * * ." MCLA 125.271; MSA 5.2963(1). (Emphasis supplied.)

The statute also requires:

"[T]he provisions of the zoning ordinance *shall* be based upon a plan."[8] MCLA 125.273; MSA 5.2963(3). (Emphasis supplied.)

Therefore, once a township proceeds to zone, even without the aid of the planning commission permitted under the township planning act, it is clear that the Legislature required townships which zoned to have a plan.

The Township Rural Zoning Act includes other references reinforcing this interpretation. The statute refers to both a "zone plan" and a "zoning ordinance". Only MCLA 125.279; MSA 5.2963(9),[9]

---

[8] "Sec. 3. The provisions of the zoning ordinance shall be based upon a plan designed to promote the public health, safety, morals and general welfare, to encourage the use of lands in accordance with their character and adaptability and to limit the improper use of land, to avoid the overcrowding of population, to provide adequate light and air, to lessen congestion on the public roads and streets, to reduce hazards to life and property, to facilitate adequate provision for a system of transportation, sewage disposal, safe and adequate water supply, education, recreation and other public requirements, and to conserve the expenditure of funds for public improvements and services to conform with the most advantageous uses of land, resources and properties; and shall be made with reasonable consideration, among other things, to the character of each district, its peculiar suitability for particular uses, the conservation of property values and natural resources, and the general and appropriate trend and character of land, building and population development." MCLA 125.273; MSA 5.2963(3).

[9] "Sec. 9. Before submitting its recommendations of a tentative *zoning plan* to the township, the township zoning board shall hold at least 1 public hearing, notice of which hearing shall be given by 2 publications in a newspaper of general circulation in the township, the first to be printed not more than 30 days nor less than 20 days and the second not more than 8 days before the date of such hearing. The notices shall include the places and times at which the tentative text *and* any maps of the *zoning ordinance* may be examined."

or MCLA 125.281; MSA 5.2963(11)[10] are unclear as to whether "ordinance" and "plan" are the same, or different things. All subsequent references, however, concerning adoption and amendment procedures clarify this, and these refer only to the "ordinance". See MCLA 125.282 *et seq.;* MSA 5.2963(12) *et seq.* Furthermore, MCLA 125.277; MSA 5.2963(7)[11] also suggests that the "plan" and the "ordinance" were intended to be two different things. This approach also clarifies MCLA 125.281; MSA 5.2963(11), *supra,* fn 10, for it is then evident that the township board is to vote upon adoption of a zoning *ordinance* only after the township zoning board submits its recommended zoning *plan.*

Therefore even without the new planning statute, the Legislature intended exactly what the plain language of MCLA 125.273 says, that "the

(Original text, prior to 1960 and 1961 amendments.) (Emphasis supplied.)

[10] "Sec. 11. At the next regular meeting, or at any special meeting called for the purpose, after receiving the recommended *zoning plan* from the township zoning board, the township board shall consider such recommendations and vote upon the adoption of a *zoning ordinance* for the unincorporated portions of the township: Provided, however, That the township board shall make no change or departure from the plans, text or maps as certified by the township zoning board unless such proposed change or departure shall first be submitted to the township zoning board for its advice or suggestions. The township zoning board shall have 15 days from and after such submission within which to send its report to the township board." (Original text, prior to 1949, 1959, and 1960 amendments.) (Emphasis supplied.)

[11] "Sec. 7. The township zoning board shall *adopt* and file with the township board recommendations as to (1) a *zone plan* for the unincorporated portions of the township as a whole which plan shall be based upon an inventory of conditions pertinent to zoning of the township, (2) the establishment of zoning districts including the boundaries thereof, (3) the text of a *zoning ordinance* with the necessary maps and zoning regulations to be adopted for any zoning district or the township as a whole, *and* (4) the manner of administering and *enforcing the zoning ordinance."* (Emphasis supplied.) (125.277a was added in 1956 to permit the zoning board to engage a planning expert. Prior to this, resources available were controlled by 125.278.)

zoning ordinance shall be based upon a plan". If a township in the State of Michigan decides to zone, it must first plan, even if the township chooses to do so without the aid and resources of a township planning commission.[12]

We do not see how these statutes can be under-

---

[12] This is further illustrated by comparing the similarity between the legislative statement of purpose of plans in the newer township planning act, MCLA 125.322; MSA 5.2963(102), with that in the Township Rural Zoning Act, 125.273 (which provision has remained unchanged).

"Sec. 2. The purpose of plans prepared pursuant to this act shall be to promote public health, safety and general welfare; to encourage the use of resources in accordance with their character and adaptability; to avoid the overcrowding of land by buildings or people; to lessen congestion on public roads and streets; to facilitate provision for a system of transportation, sewage disposal, safe and adequate water supply, recreation and other public improvements; and to consider the character of each township and its suitability for particular uses judged in terms of such factors as the trend in land and population development."

For language of MCLA 125.273, see *supra,* fn 8.

1943 PA 185, which was not the Township Rural Zoning Act, permitted township to regulate the minimum construction requirement of dwellings, buildings, and other structures. Section 3 of that act uses the language erroneously attributed by defendant township to the zoning act *(supra,* fn 8), and construed by my Brother LEVIN as not requiring a separate plan.

The older act provides:

"Sec. 3. The provisions of any such ordinance [according to § 1, the ordinance provides for 'the minimum construction requirements of dwellings, buildings and structures, and designates the manner in which, and the type of materials of which dwellings, buildings and structures shall thereafter be erected or altered.' 125.351] shall be made with reasonable consideration and in accordance with a plan * * * and with reasonable consideration for the provisions of any existing rural zoning ordinance in effect in the township." MCLA 125.353; MSA 5.2973(3).

This language remains unchanged in the new township planning act.

"Sec. 3. The provisions of any such ordinance shall be made with reasonable consideration and in accordance with a plan * * * and with reasonable consideration for the provisions of any existing rural zoning ordinance in effect in the township."

Therefore, it is most probable that the Legislature, in adopting two different forms of mandating adherence to a plan, did in fact require only the less stringent "consideration" and "in accordance with" when building construction was concerned. But as for zoning, zoning must be based on a plan.

stood to require anything less than formal adoption of a township plan.[13] The statutes clearly contemplate two separate documents, a zoning ordinance and a plan on which the ordinance is based. If an ordinance is to be based on a plan, it cannot be the same thing as a plan.

Therefore, we do not have the same concern as our Brother LEVIN, that townships may choose to evade the requirements of the planning act by disbanding their planning commissions and relying, instead, on the zoning act. The zoning act also requires a plan.

Michigan requires that a zoning ordinance be based on a plan, and that the plan is something different from the ordinance. From this foundation, certain consequences follow, namely, if the ordinance is not based on a plan, the statute has not been followed, and the zoning is invalid.

Precedent from other states is not persuasive, because the Michigan statute is unique.

### III —MICHIGAN STATUTE COMPARED WITH OTHER STATES

#### A. The Plan and Zoning Ordinance Distinguished

The Michigan statute, as is true of most other zoning and planning legislation, does not require that the plan take any prescribed form. The planning act in fact officially recognizes this flexibility by defining the basic plan required by the act as "master plan, general development plan, guide plan, or the plan referred to in Act No. 184 of the Public Acts of 1943, as amended, being sections

---

[13] Although the procedures for adoption of the plan differ, of course, between the two acts, this is largely due to the imposition of a planning commission into the process. See MCLA 125.329; MSA 5.2963(109).

125.271 to 125.301 of the Compiled Laws of 1948, being the basis on which the zoning plan is developed". Thus, while the contents of plans produced under the township planning act are required by 125.327, *supra,* fn 6, and those produced under the Township Rural Zoning Act are required by 125.273, *supra,* fn 8, the formats or names are not required.

This is similar to what has happened in other jurisdictions, and is partly a matter of historical accident, depending on when particular statutes were drafted.[14] However, whatever the term selected, the statutes are still discussing the "basic instrument" of planning.

"This master plan, a 'comprehensive, long-term general plan' for the physical development of the community, embodies information, judgments, and objectives collected and formulated by experts to serve as both a guiding and predictive force. Based on comprehensive surveys and analyses of existing social, economic, and physical conditions in the community and of the factors which generate them, the plan directs attention to the goals selected by the community from the various alter-

---

[14] " 'Master plan' is but one of many terms that can be used to describe the document which local governments use with varying degrees of success as a guide to the physical development of their communities. Over the years a variety of names have been used to describe this document: official plan, comprehensive plan, and general plan. The term 'official plan' was in vogue during the 1930's, while during the 1940's 'master plan' was the term used. The 1950's saw the term 'comprehensive plan' become popular and in the 1960's it was the 'general plan.' " Goldberg, Zoning & Land Use 17 (1972).

" '[G]eneral plan' * * * is used interchangeably with 'comprehensive plan.' Another synonym, 'master plan,' is probably the most familiar to the ear. * * * The term 'city plan' is also used." Goodman and Freund, Principles and Practice of Urban Planning 349 (1968).

"Terminology varies: 'comprehensive plan,' 'general plan,' 'municipal plan,' 'city plan,' 'development plan,' and simply 'plan' all appear. But 'master plan'—albeit in disgrace in some planning circles for its connotations of a single, rigid design * * * the term which keeps recurring in the various state enabling acts." Haar, *In Accordance with a Comprehensive Plan,* 68 Harv L Rev 1154, fn 3 (1955).

natives propounded and clarified by planning experts, and delimits the means (within available resources) for arriving at these objectives. With different local agencies concentrating on streets, parks, roads, and schools, and with the increasing tendency to delegate new techniques such as urban renewal or public housing to *ad hoc* authorities, there is danger that diverse legislative activities affecting the physical environment will not be coordinated, and that inefficiencies, inconsistencies, and waste will result. And in the press of day-to-day determinations in the field of land use, it is vital that there be some concrete unifying factor providing scope and perspective. Hence the need for city planning and the master plan, 'guiding and accomplishing,' in the words of the Pennsylvania enabling statute, 'a coordinated, adjusted, and harmonious development of the city. * * * ' " (Notes omitted.) Haar, fn 14 *supra,* 1155.

This, of course, is different from the zoning ordinance. The Appellate Division of the Supreme Court of New York ably distinguished the two by defining a master plan[15] as "a long-term, general

---

[15] For example, a suggested master plan proposal for New Jersey included:

"1. A statement of objectives, principles, assumptions, policies and standards upon which the constituent proposals for the physical, economic and social development of the area are based.

"2. A land use plan element showing the existing proposed location, extent and intensity of development of land to be used in the future for the varying types of residential, commercial, industrial, agricultural, recreational, educational and other public and private purposes or combination of purposes. The land use plan element consider soil condition information and also include a statement of the standards of population density and development recommended for the municipality and region.

"3. A housing plan element, including but not limited to, residential standards and proposals for the construction and improvement of housing. The housing plan element shall also consist of plans and programs for the elimination of existing slums and blighted areas and, where needed, for community or region redevelopment, including standards and plans for the replacement of substandard dwelling conditions by adequate housing.

"4. A circulation plan element showing the location and types of facilities for all modes of transportation required for the efficient movement of people and goods into, about, and through the municipality or region.

"5. A utility service plan element analyzing the need for and

outline of projected development", while the zoning ordinance "is but one of the many tools which may be used to implement the plan". *Fornaby v Feriola*, 18 AD2d 215; 239 NYS2d 185 (1963), cited in 1 Rathkopf, The Law of Zoning & Planning, Supplement 216.

## B. Other State Statutes

Although there appears to be general understanding that there is a difference between planning and zoning, courts have often misconstrued the relationship between the two when interpreting statutes based upon the language of the model zoning enabling act.

The Standard State Zoning Enabling Act requires zoning regulations to "be made in accordance with a comprehensive plan". Standard State Zoning Enabling Act (United States Department of Commerce [1926]), § 3, cited in 40 ALR3d 379. The enabling legislation of most states also includes

showing the future general location of water supply and distribution facilities, storm drainage, sewerage and waste treatment, solid waste disposal and provision for other related utilities.

"6. A community facilities plan element showing the location and type of educational and other cultural facilities, historic sites, libraries, places of worship, hospitals, fire houses, municipal and/or regional centers, police stations and other related facilities, including their relation to the surrounding areas.

"7. A recreation plan element showing a comprehensive system of areas, facilities and public sites for recreation; and

"8. A conservation plan element for the preservation, conservation, and utilization of natural resources, including the extent appropriate, open space, water, forests, soils, marshes, wet lands harbors, rivers and other waters, fisheries, wild life and other natural resources.

"9. Appendices or separate reports, maps and diagrams containing the involved technical details and information as the foundation for the Master Plan and its constituent elements.

"(This technical data is subject of detailed facts and data compilation and collating) (Technical data will range from a simple study of a landscaped town gateway to a computerized population study of all racial segments of a community and the New York City studies)." Goldberg, 4346.

some variation of this requirement, 1 Anderson, American Law of Zoning, § 5.02, cited *id.* [16] Most court decisions in other states have relied on construing the precise language of their state statutes. These statutes are all different from the compulsory planning-zoning language of the Michigan act, and, to that extent, are not valid precedent for interpreting our own.

The leading case cited as holding that ordinance and plan are one and the same is *Kozesnik v Montgomery Twp*, 24 NJ 154; 131 A2d 1 (1957). The language of this case, as accurately cited by my Brother LEVIN, relied on a statutory construction different from that written by our Legislature,[17] and required that zoning regulations be "in accordance with a comprehensive plan". Noting with some implicit apology that "historical development did not square with the orderly treatment of the problem which present wisdom would recommend", 24 NJ 165; 131 A2d 1, 7, *i.e.,* planning

---

[16] The Michigan statutes differ from this pattern, for both the planning and zoning acts require that the zoning "shall be based upon a plan". Only the statute regulating building construction uses the enabling act language, "in accordance with a plan". The distinction is important, because the rationale of the leading cases holding that plan and ordinance were identical were based on construing "in accordance with a plan" to mean only that zoning ordinances must be rational and not arbitrary.

[17] "The former Planning Act authorized but did not require the creation of a planning board and the adoption of a master plan. *R.S.* 40:55-3 and 6. The present Planning Act repeats this permissive approach. *N.J.S.A.* 40:55-1.4 and 1.10. Neither the former nor the present act provides that a master plan shall precede the adoption or amendment of a zoning ordinance. On the contrary, the Zoning Act initially provided for the formation of a zoning commission to recommend a zoning ordinance, *R.S.* 40:55-33, and expressly stated that an amendment of the ordinance was beyond even that provision. An amendment of that section in 1948 provides the planning board may be used instead of a zoning commission, and the same amendatory statute provides an amendment of a zoning ordinance shall not become effective unless the ordinance proposing it shall first have been submitted to the planning board. *R.S.* 40:55-35, as amended. But the statutes do not say that a master plan is prerequisite to zoning action." 24 NJ 164–165; 131 A2d 1, 6–7.

did not precede zoning, the Supreme Court of New Jersey attempted to reconcile the two by holding that " 'plan' connotes an integrated product of a rational process and 'comprehensive' requires something beyond a piecemeal approach", 24 NJ 166; 131 A2d 1, 7, and that therefore the comprehensive plan need not be manifested in some physical form outside the zoning ordinance itself.

Whatever the wisdom of this statutory interpretation, the language it analyzes is not the language of the Michigan statute. Its validity is further reduced by the grudging acceptance of the approach by some courts,[18] and by the even nar-

---

[18] The Washington Supreme Court cited *Kozesnik* and interpreted permissive statutory language as approving the *Kozesnik* approach, at the same time noting that "administrative wisdom, good planning practices, and the prospect of greater local zoning consistency may suggest the desirability of some definitive written articulation of a 'master' or 'comprehensive' plan". *Shelton v Bellevue,* 73 Wash 2d 28, 36; 435 P2d 949, 954 (1968).

The same court which authored *Kozesnik,* several years later, was able to distinguish between planning and zoning. As described in 1 Rathkopf, The Law of Zoning & Planning, 9-6, n 18:

"Note, however, the procedure followed as reported in Newark, etc. Cream Co. v Parsippany-Troy Hills Township, 47 N.J. Super. 305, 306 *[sic]* [135 A2d 682 (1957)] which involved a semi-rural area in the path of residential and industrial development. There a master plan was adopted in 1954 which consisted of assumptions as to the future of the township, the object of an ordinance in the light of such assumptions and an ordinance designed to achieve such objectives. After reviewing the master plan, the court said:

" 'We certainly have here a comprehensive plan in broad outline and objective and, without relating or elaborating on the details of the various classes of zones and regulations, we have a zoning ordinance intended to provide for carrying out those features and purposes of it which can be done through zoning. Its emphasis, of course, in a municipality only 25 to 30% developed, is not only on the present existing situation but on the future, standing as the township does in the path of inevitable further growth on a large scale. It is zoning for preparation and prevention rather than, as has been the case in the earlier days of zoning in older and built-up municipalities, merely to hold the line and try to stop the spread of deterioration and blight commenced prior to the beginning of regulation. This modern concept of planning and zoning is absolutely essential if municipalities now semi-rural are to be able to cope with the continuing flood of population expansion.' "

And, of course, the *Haar* quote cited by my Brother Levin and

rower contortions taken by other courts cited by
my Brother LEVIN which have derived their rea-
soning from *Kozesnik* and their statutory language
from the enabling act.[19] There is still another line

other courts, was a treatise directed to criticizing the practice of those
courts which had chosen to go this route.

[19] *Angermeier v Borough of Sea Girt,* 27 NJ 298; 142 A2d 624 (1958)
involved the same New Jersey statute as *Kozesnik.* The Court noted
the planning act was clearly permissive and called for a master plan,
while the zoning statute required that zoning regulations be in
accordance with a comprehensive plan. This is the troublesome lan-
guage of the enabling act which led the *Kozesnik* Court to find that
the plan need not physically exist outside the ordinance. But, this is
not the language of the Michigan zoning statute.

There is no guesswork concerned with understanding the rationale
of *Higginbotham v City of the Village,* 361 P2d 191 (Okla, 1961).
Citing *Kozesnik,* the Supreme Court of Oklahoma held that a sepa-
rate plan was not required, as *Kozesnik* construed a statute, "which
statute is almost word for word the same as Title 11 O. S. 1951 § 403".
361 P2d 191, 193–194.

In *Gayland v Salt Lake County,* 11 Utah 2d 307; 358 P2d 633
(1961), the Court held that a county planning commission has author-
ity to pass a valid zoning ordinance prior to adoption of a master
plan. The Court could do nothing else, because, while a Utah county
board of commissioners *may* appoint a county planning commission
whose function it is to make and adopt a master plan, the statutes
permitting the county commissioners to zone do not require them to
do so with regard to any plan.

"The boards of county commissioners of the respective counties
within the state are authorized and empowered to provide for the
physical development of the unincorporated territory within the
county and for the zoning of all or any part of such unincorporated
territory in the manner hereinafter provided." UCA 1953 17-27-1.

While the planning commission, once created, is empowered to
adopt a master plan, "its purpose and effect shall be solely to aid the
planning commission in the performance of its duties". UCA 1953 17-
27-6.

Therefore, there is little value in using Utah law as precedent for
interpreting our Michigan statute.

The District of Columbia statute construed in *Citizen's Association
of Georgetown, Inc v Zoning Commission of the District of Columbia,*
155 US App DC 233; 477 F2d 402 (1973), provided that zoning be
made "in accordance with a comprehensive plan". This plan was
different, said the Court, from the comprehensive plan referred to in
the National Capital Planning Act, and referred to the legislative
history of the planning act in which the Legislature specifically
rejected the suggestion that the local zoning commission be bound by
the planning agency's comprehensive plan, instead intending that the
plan be purely advisory. This was in 1926, and the Court found no
indication that Congress, in subsequent enactments, intended to

of cases which has attempted to resolve the prob-
lem more properly by analyzing the basic relation-
ship between planning and zoning[20] with results

change this relationship. 155 US App DC 233, 238, fn 16; 477 F2d 402,
407.

The Alabama statute, too, requires that zoning regulations shall be
made in accordance with a comprehensive plan.

*Come v Chancy,* 289 Ala 555; 269 So 2d 88 (1972), dealt not with
whether a plan must precede an ordinance, but with whether a city
must be bound by a master plan when rezoning.

Although quoting with approval that part of *Shelton v Bellevue,*
*supra,* which explained:

"Municipal 'zoning' on the other hand, is, in effect, a part of and an
end result or product of effective municipal 'planning,' for it is
through the medium of enacted and enforceable zoning regulations
that the aims and objectives of the land-use-classification facet of
over-all municipal 'planning' may be carried to fruition. Because an
ad hoc, piecemeal approach to municipal 'zoning' lends itself more
readily to arbitrary, capricious, unreasonable, or spot zoning situa-
tions, it follows that there must be a direct and tangible link between
over-all municipal 'planning' and over-all municipal 'zoning.' " 73
Wash 2d 28, 35–36; 435 P2d 949, 953.

The Alabama court found that the zoning ordinance must govern.
Therefore, if a city such as Tuscaloosa, which had a comprehensive
plan, including master guidelines and zoning ordinances, rezoned,
then that amendment becomes part of the comprehensive plan,
displacing all contrary provisions. The Court did, however, go beyond
those courts which have merely required zoning in accordance with
the general welfare, and require that the growth and welfare of the
entire city be taken into account. 289 Ala 555, 563; 269 So 2d 88, 95–
96. Thus, even with statutory language of the enabling act, this
appears to be another court groping uncomfortably with equating
zoning and planning.

In *Raabe v City of Walker,* 383 Mich 165, 178; 174 NW2d 789
(1970), this Court was evaluating the effect of an unadopted plan,
rather than the total absence of any plan. Further, although we did
not emphasize the unique language of the Michigan statute, it should
be noted that *Raabe,* as did *Biske v City of Troy,* 381 Mich 611; 166
NW2d 453 (1969), refused to give a zoning ordinance provided without
an adopted plan the same presumption of validity as "any regular-on-
its-face" ordinance or amendment, 383 Mich 165, 178. While *Raabe*
and *Biske* dealt with the absence of formally adopted plans, this is
the first time we have been asked to review the effect of an ordinance
promulgated without any planning at all.

[20] "Appellants urge that the action of the council was unreasonable
and in excess of the authority delegated to it by Ordinance No. 90500
for the reason that the conditional use permit does not harmonize
with the elements or objectives of the master plan. It would appear
that the 'Master Plan' is something distinct from the zoning ordi-
nance. It is authorized by 'The Planning Act of 1929' (Stats. 1929, p.

different from those in *Kozesnik* and its progeny.
Thus, the judicial construction of individual

1805; 2 Deering's General Laws, Act 5211b). A reading of the Plan-
ning Act of 1929 reveals the 'Master Plan' to be 'a comprehensive,
long-term, general plan for the physical development of the city * * *
which in the commission's judgment bears relation to the planning
thereof.' The zoning ordinance may have been adopted to implement
the 'Master Plan,' but it is not the plan itself." *Wheeler v Gregg*, 90
Cal App 2d 348; 203 P2d 37 (1949).

An intermediate approach was taken by the Supreme Court of
Connecticut in *Dooley v Town Plan & Zoning Commission*, 154 Conn
470; 226 A2d 509 (1967), which concluded by construing the statutes
that the law of Connecticut was that although the master plan was
not the zoning ordinance, neither was the master plan binding on the
zoning commission. In a modified *Kozesnik* approach, the Court held
that the statutory comprehensive plan is found in the zoning regula-
tions themselves, but that the zoning commission considered the
recommendations in the master plan of development, and noted
changes in accordance with it. Most useful to this discussion, however,
was the observation:

"Pursuant to the town charter and, presumably acting under
General Statutes § 8-23 as a planning commission, the plan and
zoning commission in 1961 adopted what it termed a comprehensive
plan 'to serve as a guide to the future growth, improvement, and
development of the Town of Fairfield.' It also recognized at the time
'the necessity for regularly reviewing, updating and revising' such a
plan 'in the changing conditions and unforeseen needs' of the town.
There is a difference in the functions of a zoning commission and the
functions of a planning commission even though, as in Fairfield, these
functions may be exercised by a single commission as provided for
under General Statutes § 8-4a. 'Its duties in each category are sepa-
rate yet related.' The 1961 plan of development is properly called a
master plan." 154 Conn 470, 472–473; 226 A2d 509, 511. (Citations
omitted.)

The Oregon Supreme Court, in *Fasano v Board of County Commis-
sioners*, 264 Or 574; 507 P2d 23 (1973), construed that state's statutes
thus:

"The basic instrument for county or municipal land use planning is
the 'comprehensive plan.' Haar, *In Accordance with a Comprehensive
Plan*, 68 Harv. L. Rev. 1154 (1955); 1 Yokley, Zoning Law and
Practice, § 3-2 (1965); 1 Rathkopf, The Law of Zoning and Planning,
§ 9-1 (3d ed 1969). The plan has been described as a general plan to
control and direct the use and development of property in a munici-
pality. * * * In Oregon the county planning commission is required
by ORS 215.050 to adopt a comprehensive plan for the use of some or
all of the land in the county. Under ORS 215.110(1), after the
comprehensive plan has been adopted, the planning commission
recommends to the governing body of the county the ordinances
necessary to 'carry out' the comprehensive plan. The purpose of the
zoning ordinances, both under our statute and the general law of land
use regulation, is to 'carry out' or implement the comprehensive plan.

state zoning and planning statutes is not quite as homologous as one might suppose from a reading of some commentators. The concern expressed in the opinions is both to protect the landowner from arbitrary restrictions on the use of his or her property, as well as to ensure that local authorities act for the benefit of the community as a whole following a deliberate consideration of alternatives.

To this end, our Legislature has required that township zoning ordinances "be based upon a plan". Such language and such intent militates against our analyzing whether the zoning ordi-

---

1 Anderson, American Law of Zoning, § 1.12 (1968). Although we are aware of the analytical distinction between zoning and planning, it is clear that under our statutes the plan adopted by the planning commission and the zoning ordinances enacted by the county governing body are closely related; both are intended to be parts of a single integrated procedure for land use control. The plan embodies policy determinations and guiding principles; the zoning ordinances provide the detailed means of giving effect to those principles.

"ORS 215.050 states county planning commission 'shall adopt and may from time to time revise a comprehensive plan.' In a hearing of the Senate Committee on Local Government, the proponents of ORS 215.050 described its purpose as follows:

" ' * * * The intent here is to require a basic document, geared into population, land use, and economic forecasts, which should be the basis of any zoning or other regulations to be adopted by the county. * * * ' " [Note omitted.]

"In addition, ORS 215.055 provides:

" '215.055 Standards for plan. (1) The plan and all legislation and regulations authorized by ORS 215.010 to 215.233 shall be designed to promote the public health, safety and general welfare and shall be based on the following considerations, among others: The various characteristics of the various areas in the county, the suitability of the areas of particular land uses and improvements, the land uses and improvements in the areas, trends in land improvement, density of development, property values, the needs of economic enterprises in the future development of the areas, needed access to particular sites in the areas, natural resources of the county and prospective needs for development thereof, and the public need for healthful, safe, aesthetic surroundings and conditions." 264 Or 574, 582–583; 507 P2d 23, 27–28.

The Court held, that because zoning changes must be "in conformance with the comprehensive plan" 264 Or 574, 583; 507 P2d 23, 28, it was necessary to have portions of that plan before the Court.

nance is a comprehensive plan. To do so is to ignore a carefully-thought-out statutory scheme requiring a plan, and then a zoning ordinance to implement the plan.

It is obvious that Monroe Township did not fulfill the plan requirement.

## C. What Are the Consequences?

The decisions of this Court have supported the approach of requiring township planning. As far as we can tell, however, this is the first time we have been faced with the problem of a township which has no planning at all.

In *Biske v City of Troy,* 381 Mich 611; 166 NW2d 453 (1969), a unanimous Court held that an unadopted master plan would not be given the evidentiary weight of reasonableness of an adopted one. Since the Michigan Legislature has established a requirement of community review of land planning, MCLA 125.38; MSA 5.2998, we said this review could not be evaded. 381 Mich 611, 614–615.

Further, this Court recognized that one reason for attributing a presumption of reasonableness to community zoning ordinances is that the ordinance is based on sound planning.

"The mandatory requirement, that 'The commission shall make and adopt a master plan for the physical development of the municipality, including any areas outside of its boundaries which, in the commission's judgment, bear relation to the planning of the municipality' (see PA 1931, No 285, § 6 [CL 1948, § 125.36], as amended by PA 1962, No 138 [Stat Ann 1969 Cum Supp § 5.2996]), is of no little significance when courts are called upon to consider the reasonableness of zoning which depends upon the predictions of such a plan and the need for reasonable stability thereof once the plan

has been adopted pursuant to the procedure required by section 8 of the act (CL 1948, § 125.38 [Stat Ann 1958 Rev § 5.2998]). In short, we are not disposed to grant any municipal master plan, not yet adopted according to section 6 (CL 1948, § 125.36, as amended by PA 1962, No 138 [Stat Ann 1969 Cum Supp § 5.2996]), the evidentiary value of reasonableness which Division 2 accords this one. The point is that the statutory requirement of formal adoption has a purpose, a rather manifest one, and our decision here should tend to effectuate that purpose." 381 Mich 611, 616.

It is apparent that the ordinance itself may not be considered as ipso facto evidence that zoning determinations are reasonable if there is no master plan available.

One year after *Biske,* we noted that the "absence of a formally adopted municipal plan, whether mandated by statute or not, does not of course invalidate municipal zoning or rezoning. But it does, as in *Biske, supra,* weaken substantially the well known presumption which, ordinarily, attends any regular-on-its-face municipal zoning ordinance or amendment thereof." *Raabe v City of Walker,* 383 Mich 165, 178; 174 NW2d 789 (1970).

*Biske* and *Raabe* are weaker cases than the instant case. In *Biske, supra,* there was a plan, but it had not been adopted. In *Raabe, supra,* rezoning was based on a plan which also had not been formally adopted. Even in *Yale Development Co v City of Portage,* 11 Mich App 83; 160 NW2d 604 (1968), cited to us by defendant, Portage had contracted for the services of a city planning consulting firm, but the proposals had not been completed. 11 Mich App 83, 88.

Therefore, the total lack of any planning in the instant case does more than merely affect the presumption of reasonableness we attribute to a

properly adopted zoning ordinance. While *Biske* and *Raabe* are correct in applying a weakened presumption where there is an existing, but unadopted, master plan, the absence of any plan at all requires stronger sanctions. The Legislature has decreed that there must be planning before zoning.

In the future, if this Court is presented with such a zoning ordinance implemented in a manner contrary to and without reference to statute, we will find that ordinance to be invalid. However, we take judicial notice of the confusion attending the appropriate interpretation of our statute, and recognize, therefore, that it would be inequitable to so hold in the instant case.

This does not mean, however, that Monroe Township may continue zoning without planning. We remand to the trial court for further proceedings not inconsistent with this opinion.

Monroe Township is hereby ordered to make good faith efforts to establish a plan. If such efforts are not undertaken within 90 days of the entry of this order, and if reasonable continued progress is not made, then any property owner so desiring may begin proper suit and stand in the same stead as plaintiffs in this suit. At that juncture, it will be appropriate for the trial court to apply the rule invalidating ordinances undertaken without planning. During the aforementioned 90 days, the rule of *Biske* will control.

As for plaintiffs, relief is granted on other grounds.

### IV —IS RESIDENTIAL ZONING OF PLAINTIFFS' PROPERTY INVALID AS CONFISCATORY?

Plaintiffs allege that the zoning ordinance is invalid as applied to their property because, under

the circumstances, requiring it to be used for residential purposes amounts to confiscation. The land, they argue, *supra,* can be used as a practical matter only for a mobile-home park. No other use would be profitable. The mobile-home park use will not only be profitable, but the community needs mobile-home parks. It does not need more single and multiple-family residences. Additionally, plaintiffs say, a mobile-home park on that site is good planning.

Defendants contend, *supra,* that there is no confiscation because the land can be used successfully as zoned.

This raises the second principle in *Kropf v Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974).[21] We stated the standards by which allegations of confiscation are determined. This principle is that plaintiff has the burden of proving "that an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use in the area in question", 391 Mich 139, 158, and that "if the ordinance is enforced the consequent restrictions on his property preclude its use for any purpose to which it is reasonably adapted". 391 Mich 139, 162–163. And of course, as in all equity cases, "considerable weight" is given "to the findings of the trial judge". 391 Mich 139, 163, quoting *Christine Building Co v City of Troy,* 367 Mich 508, 518; 116 NW2d 816 (1962). If plaintiff thus sustains an attack[22] on the validity of the ordinance, he is

---

[21] In *Kropf,* we indicated two principles by which zoning could be declared invalid:

"[F]irst, that there is no reasonable governmental interest being advanced by the present zoning classification itself * * * or

"[S]econdly, that an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use in the area in question." 391 Mich 139, 158.

[22] To sustain this burden, it is not sufficient to establish that

entitled to the land use he is petitioning for under normal and regular conditions unless such use would be a nuisance. To do otherwise would leave petitioner with property no one can use.

In the instant case, the trial court found no confiscation. We hold that the trial court used an inappropriate standard to determine whether the ordinance was indeed confiscatory as to plaintiffs' property when it found that "the plaintiffs have not demonstrated by a preponderance of the proofs that the continual zoning of the premises as RB is detrimental to the health, safety and welfare in the township". Further, it was error to hold that the zoning ordinance was itself evidence of the general plan of development.

The trial court held that "the property in question can be used as agricultural property, profitably, and that it can be developed as a site for single or multiple dwellings". The Court of Appeals, however, reviewing the evidence *de novo,* although giving "considerable weight" to the trial judge's finding of facts, reversed that holding:

"The record discloses persuasive evidence that the high cost of removing obstacles on the property, alleviating drainage problems, and employing a sewage lift pump precluded the use of plaintiffs' property for agricultural purposes. Likewise, the construction difficulties created by the surrounding uses for the development of either single or multiple residences and nonexistent market for the construction of multiple units indicates

property might have been worth more if zoned as plaintiff wishes. *Patchak v Lansing Twp,* 361 Mich 489; 105 NW2d 406 (1960); *Paka Corp v City of Jackson,* 364 Mich 122, 127; 110 NW2d 620 (1961). The value differential, however, is an element which the court will consider in determining whether the existing zoning ordinance amounts to such confiscation. Thus, if property is rendered almost worthless, *North Muskegon v Miller,* 249 Mich 52; 227 NW 743 (1929), and evidence is produced indicating a lack of marketability, *Pederson v Harrison Twp,* 21 Mich App 535; 175 NW2d 817 (1970), indicia of confiscatory hardship are presented.

568 Mich 531 [Aug

that the subject parcel was unsuitable for either of the remaining uses permitted by the defendant's ordinance. Upon these facts the property is so devoid of feasibility for use as zoned that the ordinance is deemed confiscatory." 46 Mich App 344, 350.[23]

This is not a situation where plaintiffs argue that the difference in value alone, between land used as the existing ordinance requires, and land used as they would like to, is of such substantial disparity as to render that ordinance confiscatory as applied to their land. The problem in the instant case is that while the land will have some value if used as zoned, it would require such extensive changes at tremendous cost as to virtually transform the nature of the property. In *Fenner v Muskegon,* 331 Mich 732; 50 NW2d 210 (1951), we found application of a zoning ordinance restricting land to residential use "in practical effect, confiscatory of plaintiffs' property". 331 Mich 732, 736. The subject property, low marshy land, was "not suitable for the erection of residences or homes, or buildings of any kind without expending substantial sums for footings, excepting a strip along the northerly line of the property including an area where plaintiffs have removed sand". 331 Mich 732, 734.

The reasoning of the Court of Appeals in the instant case was consistent with this approach, finding, as in *Spanich v Livonia,* 355 Mich 252; 94 NW2d 62 (1959), where we adopted the trial

[23] The Court of Appeals used criteria similar to those in *Alderton v Saginaw,* 367 Mich 28; 116 NW2d 53 (1962). Although not specific to confiscation, the principles are particularly applicable to analyzing this question:

"In determining validity of an ordinance we give consideration to * * * unsuitability for residential purposes; lack of market for such purpose, and whether the land will become 'dead land' or non-income producing land without residential value." (Citations omitted.) 367 Mich 28, 34.

court's holding, that "it would be financially un-
sound to develop [the property] for residences".
355 Mich 252, 264.

We therefore affirm the holding of the Court of
Appeals that the ordinance amounted to confisca-
tion as applied to plaintiffs' property.

## V —IS THE MONROE TOWNSHIP MOBILE-HOME PARK ZONING INVALID AS SPOT ZONING?

The Monroe Township zoning ordinance has no
separate classification for mobile homes. Mobile
homes are permitted only within districts zoned
commercial upon approval by the Board of Ap-
peals on a case-by-case basis. Thus, the ordinance
permits:

"§ 9.1(g) A trailer coach park if the Board of Appeals
finds such would be constructed and operated in accord-
ance with the State law, but no permit therefor shall be
issued until after a public hearing has been had
thereon by the Board of Appeals after five days' previ-
ous notice in writing thereof has been given to all
property owners within 1/2 mile of the perimeter of the
site of the proposed Trailer Coach Park, and the Board
of Appeals determines after such hearing that the use
of the proposed site as a Trailer Coach Park would not
be detrimental to the interest of the majority of the
property owners within 1/2 mile of the perimeter of the
proposed site and subject to such other general limita-
tions and guides as herein established for the Board of
Appeals including public notice of such hearing."

Plaintiffs contend that such a scheme is invalid
as spot zoning.

Plaintiffs' property is not in a commercial zone
so they have no standing to challenge the validity
of such an ordinance, on the one hand. On the
other hand, plaintiffs have not in this case chal-

lenged the validity of the ordinance on the basis of exclusion, so we are not called upon to consider whether exclusion exists. In any event, we have found the ordinance invalid for lack of a master plan so the case is otherwise disposed of in plaintiffs' favor.

## VI —CONCLUSION

The Court of Appeals reversal of the trial court is affirmed but for a different reason. The Court of Appeals opinion as to which mobile-home park standards apply is vacated for the reasons that this matter was not argued in the trial court and there is no proper record for the Court of Appeals or this Court upon which to make a decision. The matter is remanded to the trial court for further proceedings not inconsistent with this opinion. Costs to plaintiffs.

EXISTING LAND USE

M. S. Coleman, J. *(to reverse).* I agree with
Justice Levin's two opening paragraphs and with
part II of his opinion as they apply to these cases
and to *Nickola.* [1] Had he stopped there, he proba-
bly would have sought to reverse the Court of
Appeals in each instance and I would have signed
his opinion.

Part I, however, leads him in each case to af-
firmance of the Court of Appeals but for a differ-
ent reason—one with which I am not in accord.

He would hold that any request for rezoning
which is "reasonable" must be allowed regardless
of zoning ordinances. That conclusion affords nei-
ther a workable standard—if it can be called a
"standard"—nor any furtherance of the legislative
objectives in zoning enactments.

The legislature, acting properly within its com-
petence, has in this case placed the zoning author-
ity in the township.

The Court's role is to ascertain that correct
procedures are followed and that appropriate stan-
dards are employed. We do not sit as a super
zoning board—or so we say. Neither do we sit to
impose our social policies upon local communities.
We should not be so presumptuous as to establish
common community denominators by judicial fiat.
Neither should we be so disrespectful of properly
enacted local ordinances that we undermine com-
munity attempts to establish commonality of
health, safety, economic, ecological, educational
and esthetic interests.

## Conclusion

For the reasons set forth in Justice Levin's

---

[1] I have written separately in *Nickola.*

opinion, excepting part I, I come to the opposite conclusion.

I would reverse the Court of Appeals in each of these cases.

SWAINSON and LINDEMER, JJ., took no part in the decision of this case.