ROMAN CATHOLIC ARCHBISHOP OF DETROIT *v.* VILLAGE
OF ORCHARD LAKE.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCES—CHURCHES—
SCHOOLS—FINDING OF COURT—RECORD.

Finding of trial court that zoning ordinance in practical effect
excluded churches and schools from the village *held*, supported by the record.

2. CONSTITUTIONAL LAW—USE OF PROPERTY—DUE PROCESS—EMI
NENT DOMAIN.

The right to enjoy and use property in any way the owner may
choose, so long as it be not for the maintenance of a nuisance injurious to others, is one of which he may not be deprived by government without due process of law nor may
it be taken from him by the government without just compensation (US Const, ams 5, 14; Mich Const 1908, art 2, § 16,
art 13, § 1).

3. SAME—USE OF PROPERTY—POLICE POWERS.

The owner's right to use his property is subject to reasonable
regulation, restriction and control by the State in the legitimate exercise of its police powers.

4. SAME—POLICE POWER—PUBLIC HEALTH, SAFETY, MORALS—GEN
ERAL WELFARE.

The test of legitimacy of the exercise of governmental police
power is the existence of a real and substantial relationship
between the exercise of those powers in a particular manner in a given case and public health, safety, morals or the
general welfare.

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 12 Am Jur, Constitutional Law §§ 658, 674.
[3] 11 Am Jur, Constitutional Law §§ 268, 269.
[4] Generally as to nature and limitations of the police power, see
11 Am Jur, Constitutional Law §§ 248, 249, 304.
[5] As to singing in church as nuisance, see 39 Am Jur, Nuisances
§ 49.
[6, 7] 37 Am Jur, Municipal Corporations § 177.
[8] 14 Am Jur, Costs § 91.

5. NUISANCE—CHURCHES—SCHOOLS.

The use of premises for church or school purposes does not amount to a nuisance.

6. MUNICIPAL CORPORATIONS — ORDINANCES — PRESUMPTIONS —EVIDENCE.

The presumption that a village ordinance is valid and reasonable is not indulged, where the ordinance on its face, together with competent evidence in the case, presents a question for judicial determination.

7. SAME — ORDINANCES — CHURCHES — SCHOOLS — CONSTITUTIONAL LAW.

Village ordinance which in effect excludes churches and schools from the entire village will not be presumed constitutional in view of provision of Constitution setting forth the necessity to good government of religion, morality and knowledge and the mandate to encourage schools and the means of education (Const 1908, art 11, § 1).

8. COSTS — PUBLIC QUESTION — ZONING ORDINANCE — CHURCHES — SCHOOLS.

No costs are allowed in suit to enjoin enforcement of village zoning ordinance which in effect excluded churches and schools from the village, a public question being involved.

Appeal from Oakland; Hartrick (George B.), J. Submitted January 15, 1952. (Docket No. 51, Calendar No. 45,238.) Decided May 16, 1952.

Bill by Edward Mooney, Roman Catholic Archbishop of the Archdiocese of Detroit, and another against Village of Orchard Lake and others to restrain enforcement of zoning ordinance. Decree for plaintiff. Defendants appeal. Affirmed.

*George A. Cram* and *Monaghan, Hart & Crawmer,* for plaintiffs.

*Earl L. Phillips* (*Butzel, Eaman, Long, Gust & Kennedy,* of counsel), for defendants.

DETHMERS, J. Defendants appeal from a decree enjoining them from enforcing a zoning ordinance

so as to prevent plaintiffs' erection and maintenance of a church and school on premises owned by them before adoption of the ordinance and situated in a zone thereunder restricted to use for private dwellings only.

The trial court found as a fact, from the evidence in the case, which need not be recounted here, that although the ordinance appeared on its face to allow churches and schools, under special permit only, in 3 zones comprising about 10% of the village's area while prohibiting them in the fourth zone containing the balance of the village, nevertheless, when applied to existing facts and circumstances, it served, as a practical matter, to exclude churches and schools from the village. The finding is fairly supported by the record.

As authority for the proposition that churches and schools may not be excluded by ordinance from residential districts or zones, plaintiffs rely on *City of Sherman* v. *Simms*, 143 Tex 115 (183 SW2d 415); *Ellsworth* v. *Gercke*, 62 Ariz 198 (156 P2d 242); *Roman Catholic Archbishop of Diocese of Oregon* v. *Baker*, 140 Or 600 (15 P2d 391); *State, ex rel. Synod of Ohio of United Lutheran Church in America*, v. *Joseph*, 139 Ohio St 229 (39 NE2d 515, 138 ALR 1274); *State, ex rel. Roman Catholic Bishop of Reno*, v. *Hill*, 59 Nev 231 (90 P2d 217); *North Shore Unitarian Society, Inc.*, v. *Village of Plandome*, 200 Misc 524 (109 NYS2d 803); *State, ex rel. Tampa Company of Jehovah's Witnesses*, v. *City of Tampa* (Florida), 48 So2d 78; *Western Theological Seminary* v. *Evanston*, 325 Ill 511 (156 NE 778). Defendants undertake, with varying degrees of success, to demonstrate the inapplicability of those cases to the case at bar. In turn, their chief reliance is placed upon *Corporation of Presiding Bishop of the Church of Jesus Christ of Latter Day Saints* v. *City of Porterville*, 90 Cal App2d 656 (203 P2d 823) (appeal dis-

missed for want of Federal question, 338 US 805 [70 S Ct 78, 94 L ed 487], rehearing denied, 338 US 939 [70 S Ct 342, 94 L ed 579]). There the ordinance divided the city of Porterville into 4 zones, in 2 of which residences only were permitted. The significant factor distinguishing that case from this is that the California court found that "there is nothing in the record before us to indicate that the church building could not be erected if located in the area zoned for that purpose." We are not insensitive to the persuasiveness of some of the reasoning in that case to the effect that churches may as lawfully be excluded as may multiple dwellings from single-family residential areas. That, however, is not the question before us. On the basis of the record at bar the question to be determined is whether churches and schools may, in effect, be excluded by ordinance from the entire village.

The right to full and free use and enjoyment of one's property in a manner and for such purpose as the owner may choose, so long as it be not for the maintenance of a nuisance injurious to others, is one of which he may not be deprived by government without due process of law nor may his property be taken by government without just compensation. US Constitution, ams 5 and 14; Michigan Constitution, 1908, art 2, § 16, and art 13, § 1. The owner's right to use is, however, subject to reasonable regulation, restriction and control by the State in the legitimate exercise of its police powers. The test of legitimacy is the existence of a real and substantial relationship between the exercise of those powers in a particular manner in a given case and public health, safety, morals or the general welfare. *Village of Euclid* v. *Ambler Realty Co.*, 272 US 365 (47 S Ct 114, 71 L ed 303, 54 ALR 1016); *Austin* v. *Older*, 283 Mich 667; *Northwood Properties Co.* v. *Royal Oak City Inspector*, 325 Mich 419.

The use of premises for church or school purposes does not amount to a nuisance. *Smith* v. *First United Presbyterian Church,* 333 Mich 1. Does exclusion of church and school from the entire village bear a real and substantial relationship to public health, safety, morals or the general welfare and thus constitute a reasonable and legitimate exercise of the police power? Defendants say that a presumption prevails in favor of the reasonableness and validity of the ordinance unless the contrary is shown by competent evidence or appears on the face of the enactment and that the burden rests on plaintiffs to show that it has no real or substantial relationship to public health, safety, morals or the general welfare, citing *Harrigan & Reid Co.* v. *Burton,* 224 Mich 564 (33 ALR 142) ; *Austin* v. *Older, supra; Portage Township* v. *Full Salvation Union,* 318 Mich 693, and *Northwood Properties Co.* v. *Royal Oak City Inspector, supra;* that plaintiffs offered no proofs in relation thereto; and that, if there are proofs both ways relating to the subject, it is not for this Court to weigh the same but only to see whether there is substantial testimony supporting the conclusion in that regard of the legislative authorities, in which case the latter is to be upheld, citing *City of Detroit* v. *Michigan Railroad Commission,* 209 Mich 395 at 433 (PUR1920D, 867) ; *Washington Agency, Inc.,* v. *Commissioner of Insurance,* 309 Mich 683 at 687. This is not a case such as those relied upon in this connection by defendants, as, for example, *Northwood Properties Co.* v. *Royal Oak City Inspector, supra,* in which the proofs showed merely that the ordinance restricted a certain zone to use for single residences. There was no evidence in that case concerning the effects of the operation of the ordinance, the reasonableness thereof, nor the relationship between the objects sought to be accomplished and the public health, safety, morals or general welfare,

for lack of which the presumption of validity was indulged. In the instant case, on the contrary, the ordinance, exhibits and testimony show that the ordinance operates to exclude churches and schools from the entire village. Consequently, we are confronted with an enactment showing on its face that which, combined with the competent evidence in the case, obviates the necessity for resort to the presumption of reasonableness and validity and raises a question for judicial determination.

The ordinance of 1787 for the governing of the great Northwest Territory, of which Michigan is a part, pronounced a conviction and purpose, reiterated in the Michigan Constitution of 1908, art 11, § 1, which formed the cornerstone of the governmental structures of the territory and of the States subsequently carved therefrom, in these exalted terms:

"Religion, morality and knowledge, being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged."

Hardly compatible is this with a presumption that exclusion of school and church from an entire municipality is conducive to public health, safety, morals or the general welfare, a presumption which we decline to indulge. A thesis so inconsistent with the spirit and genius of our free institutions and system of government and the traditions of the American people will not be accepted by way of presumption, nor at all in the absence of competent evidence establishing a real and substantial relationship between the attempted exclusion and public health, safety, morals or the general welfare and, hence, the reasonableness and validity of the restriction upon use of private property as a legitimate exercise of the State's police powers.

Affirmed, without costs, a public question being involved.

NORTH, C. J., and BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.