GUNDERSEN *v.* VILLAGE OF BINGHAM FARMS.

1. COURTS—CONSTRUCTION OF STATUTES.

The duty to construe and apply Michigan law lies with the Supreme Court of Michigan.

2. MUNICIPAL CORPORATIONS—ZONING—SINGLE-USE ORDINANCE.

The statute authorizing cities and villages to adopt zoning ordinances does not authorize a 1-use zoning of an entire city or village (CL 1948 and CLS 1956, § 125.581 *et seq.*).

3. SAME—ZONING ORDINANCES—STATUTES.

The authorizing statute contemplates that city or village zoning ordinance zone the area into use districts that are deemedly best suited to the promotion of the public health, safety, morals, and general welfare (CL 1948 and CLS 1956, § 125.581 *et seq.*).

4. SAME—ZONING ORDINANCES.

More than 1-use district must be provided by a city or village zoning ordinance, each district to be defined with reasonable consideration of conditions determinative of character, peculiar suitability for particular uses, conservation, and general trend (CL 1948 and CLS 1956, § 125.581 *et seq.*).

5. PROPERTY—USES—POLICE POWER.

An individual's right to the use of his property is subject to reasonable regulation, restriction, and control by the State in the legitimate exercise of its police powers.

6. MUNICIPAL CORPORATIONS — ORDINANCES — PRESUMPTIONS — STATUTES.

The usual presumption of validity accorded to a municipal ordinance does not survive when the ordinance on its face shows a purpose to restrict use of property in a manner not authorized by the enabling statute (CL 1948 and CLS 1956, § 125.581 *et seq.*).

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 58 Am Jur, Zoning §§ 21, 22.
[3-5] 58 Am Jur, Zoning § 25 *et seq.*
[6] 58 Am Jur, Zoning § 16.
[7] 58 Am Jur, Zoning § 14 *et seq.*

7. SAME—UNAUTHORIZED SINGLE-USE ZONING ORDINANCE.

.   The fact that a village zoning ordinance was invalid because it
    provided but a single use for all property within the entire
    village, a restriction not authorized by statute, would not assure
    a property owner of relief against any new and valid ordinance
    (CL 1948 and CLS 1956, § 125.581 *et seq.*).

Appeal from Oakland; Beer (William John), J. Submitted December 3, 1963. (Calendar No. 107, Docket No. 50,173.) Decided March 5, 1964.

Bill by Andrew G. Gundersen, Crystal B. Gundersen and others against the Village of Bingham Farms, a municipal corporation, to enjoin enforcement of zoning ordinance. Bill dismissed. Plaintiffs appeal. Reversed and remanded for further proceedings.

*Dell & Shantz (Harry N. Dell, of counsel), for plaintiffs.

*Howlett, Hartman & Beier,* for defendant.

BLACK, J.   Tested for validity—in the application thereof to the properties of plaintiffs—is a village zoning ordinance which attempts to restrict use of *all* property in the village, nonconforming uses only excepted, to single-residence life. The properties of plaintiffs front upon Telegraph road in Oakland county, and are affected adversely by traffic conditions much akin to such as were considered in *White* v. *Township of Southfield,* 347 Mich 548.

The principal authority cited by counsel for the defendant village portrays the reason why an ordinance of such character teeters at the brink of invalidity. The case is *Valley View Village* v. *Proffett* (CCA 6, 1955), 221 F2d 412. There the court of appeals, concededly unaided by applicable State

court precedent, concluded (p 416) that under the constitution and laws of Ohio there was no requirement "that in order to regulate and restrict it [the village] *must* divide the municipality into more than 1 district."[1]

Whether the supreme court of Ohio has or would so hold is not considered in the briefs. In any event the duty to construe and apply Michigan law lies with this Court. That task we now undertake.

For reasons made clear in the more recent and excellently reasoned case of *City of Moline Acres* v. *Heidbreder* (Mo), 367 SW2d 568, wherein all authorities extant are gathered and considered, we decline to follow the *Valley View Case*. Our conclusion, like that of the Missouri court, is that the statute (PA 1921, No 207, as amended [CL 1948 and CLS 1956, § 125.581 *et seq.* (Stat Ann 1958 Rev § 5.2931 *et seq.*)]) under which this unusual ordinance was enacted does not authorize 1-use zoning of an entire city or village. Instead, the statute contemplates and authorizes an ordinance or ordinances which

---

[1] The court in *Valley View* summarized its conclusion and ordered remand (p 418):

"Situations in which the legislative body of a municipality would even desire to put its entire area into but 1-use district are no doubt rare. Situations in which such an ordinance would withstand constitutional attack with respect to the impact upon particular property within the municipality are perhaps even rarer. We conclude only that, if otherwise permitted by the constitution and statutes of the State, a 1-use ordinance is not necessarily so arbitrary and unreasonable as in every case to be invalid.

"A zoning ordinance may be generally valid, however, and at the same time be so arbitrary and unreasonable in its concrete application to particular premises as to be invalid as applied to them. *Village of Euclid* v. *Ambler Realty Company*, 272 US 365, at page 395 (47 S Ct 114, 71 L ed 303, 54 ALR 1016). Because it concluded that the ordinance was not permissible under Ohio law, the district court expressly refrained from deciding whether or not its effect upon appellees' property was so arbitrary and unreasonable as to constitute a deprivation of their property in violation of the State and Federal Constitutions.

"The judgment is accordingly reversed and the case is remanded to the district court for decision of that question."

divide the city or village to be zoned into use districts, the number, shape, and area of which are deemedly best suited to the promotion of that focal standard, that is, the public health, safety, morals, and general welfare. This is not to say that there must be any great or stated number of use districts. It is to say that there must be more than 1, each defined "with reasonable consideration" of conditions determinative of "character," "peculiar suitability for particular uses," "conservation" and "general trend."

We are, indeed must be, guided to that sometimes elusive legislative intent by assumption that legislators vote for or against introduced bills with the decisions of this Court in 1 hand as they press vote-buttons with the other. The established rule, not only for test of constitutional reasonableness but also for ascertainment of such intent, has been announced many times. A fair example appears in *Roman Catholic Archbishop of Detroit* v. *Village of Orchard Lake,* 333 Mich 389. The following, written for the Court by Justice DETHMERS, suggests fairly that the legislature hardly could have intended, when controlling section 1 of the cited statute was considered and approved, that the section be construed as authorizing city-wide or village-wide single use ordinances. We quote (p 392):

"The right to full and free use and enjoyment of one's property in a manner and for such purpose as the owner may choose, so long as it be not for the maintenance of a nuisance injurious to others, is one of which he may not be deprived by government without due process of law nor may his property be taken by government without just compensation. * * * The owner's right to use is, however, subject to reasonable regulation, restriction, and control by the State in the legitimate exercise of its police

powers. The test of legitimacy is the existence of a real and substantial relationship between the exercise of those powers in a particular manner in a given case and public health, safety, morals, or the general welfare (citing cases)."

Substantially the same argument is made by the village as was presented in the *Moline Acres Case.* With respect to it the court said (p 573):

"The city insists: that a plan such as this may be 'comprehensive' where it includes the entire town, even though it establishes only 1 use district; that there was no necessity for hiring consultants or for a lengthy study, and that the trustees were entirely capable of making the determination that the entire village was suited to 1-family residences, and to act accordingly. It is true that section 89.040[2] permits the consideration of the 'character of the district' and of its suitability for particular uses. We are of the view, however, that, considering these statutes as a whole, in context, and considering their aggregate purpose and intent, it was never intended thereby to give to a municipality the power to adopt a 1-*use-district* zoning ordinance encompassing the whole town." (Italics by Missouri court.)

Such reasoning appeals to us as being in accord with the legislative intent when the statute under which the ordinance in scrutiny was enacted. The authorizing section thereof reads (CL 1948, § 125-.581 [Stat Ann 1958 Rev § 5.2931]):

"Sec. 1. The legislative body of cities and villages may regulate and restrict the location of trades and industries and the location of buildings designed for specified uses and for such purposes divide any city or village into districts of such number, shape and area as may be deemed best suited to carry out the provisions of this section. For each of such districts

[2] Missouri Rev Stat, 1959.—REPORTER.

regulations may be imposed designating the uses for which buildings or structures shall or shall not be erected or altered, and designating the trades and industries that shall be permitted or excluded or subjected to special regulations. Such regulations shall be made in accordance with a plan designed to lessen congestion on the public streets, to promote public health, safety and general welfare, and shall be made with reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the general trend and character of building and population development."

*Summary:* The attempted restriction to single-residence use gathers no protection from the usual presumption of validity since no statute as yet authorizes such a community-wide restriction. When and if such an authorizing statute is enacted, that will be the time to test for "reasonableness" an ordinance adopted in pursuance thereof. The circuit court's decree is therefore reversed with instruction that, upon remand, a new judgment enter consistent with the foregoing opinion. It is hardly necessary to add that such new judgment will not assure, to plaintiffs, relief as against any new, valid and reasonably applied ordinance. See, to the point, *Double I Development Company* v. *Township of Taylor,* 372 Mich 264.

In passing, it may assist counsel to know that our research so far has disclosed but 1 factually similar Michigan case, that of *Hammond* v. *Bloomfield Hills Building Inspector* (1951), 331 Mich 551. There however the ordinance restricted 90% rather than 100% of the village to "single" dwelling use. Too, the record disclosed an instance where the plaintiffs (p 555) had "helped to create" the situation of which they complained; a situation "of which they took full advantage." We have not for such reasons regarded

the *Hammond Case* as presently applicable or controlling.

Reversed and remanded.   Costs to plaintiffs.

KAVANAGH, C. J., and DETHMERS, KELLY, SOURIS, SMITH, and O'HARA, JJ., concurred.

ADAMS, J., took no part in the decision of this case.