NICKOLA v GRAND BLANC TOWNSHIP

Docket No. 55088. Argued June 7, 1974 (Calendar No. 23).—Decided August 19, 1975.

In 1963, plaintiffs David Nickola, Jr., and Evelyn Nickola petitioned for rezoning of real property in Grand Blanc Township, Genesee County, to mobile-home park use. After two years, the township advised plaintiffs it was denying the petition because the premises had not yet been served by sanitary sewers and the State Highway Department had still to acquire land for the I-475 expressway right-of-way. In April 1969, following completion of both land acquisition and sewer system, plaintiffs again petitioned for the zoning ordinance amendment and, after two public hearings, received a favorable recommendation from the Grand Blanc Zoning Board. The Grand Blanc Township Zoning Board rejected the request. The Grand Blanc Township master land-use plan had not yet been adopted when the petition was rejected. Plaintiffs brought an action against Grand Blanc Township and others to have the township's zoning ordinance declared unconstitutional as applied to plaintiffs' property and to allow a mobile-home park to be constructed on the property. The Genesee Circuit Court, Donald R. Freeman, Jr., found plaintiffs did not defeat the presumption of reasonableness of the township's ordinance. The Court of Appeals, Quinn, P. J., and Bronson and O'Hara, JJ., reversed, holding that the ordinance has no reasonable relationship to the township's morals, health or safety, especially in view of the health-and-safety

REFERENCES FOR POINTS IN HEADNOTES
[1, 9–11, 14, 15] 54 Am Jur 2d, Mobile Homes, Trailer Parks, and Tourist Camps §§ 5–16.
[2] 58 Am Jur, Zoning §§ 21, 22.
[3, 4, 13] 58 Am Jur, Zoning §§ 16, 21, 256.
[5] 58 Am Jur, Zoning § 140.
[6] 58 Am Jur, Zoning §§ 223, 225.
[7] 58 Am Jur, Zoning § 27.
[8] 58 Am Jur, Zoning § 20.
[12] 58 Am Jur, Zoning § 14 et seq.
[16] 58 Am Jur, Zoning § 255.
[17] 58 Am Jur, Zoning § 14 et seq.

requirements imposed upon mobile-home parks by statute (Docket No. 12959). Defendants appeal. *Held:* The decision of the Court of Appeals is affirmed.

Levin, J., with whom T. G. Kavanagh, C. J., and J. W. Fitzgerald, J., concurred, voted to affirm the Court of Appeals for the reasons given in *Sabo v Monroe Twp, ante,* 394 Mich 531; 232 NW2d 584 (1975), namely:

1. On proof that a community has excluded a legitimate use, it does not necessarily become obliged to grant a request for rezoning to permit that use. The land sought to be rezoned may not be suitable for development for the excluded use.

2. In seeking a change in the zoned use of their property, plaintiffs sought an administrative, not a legislative, determination. The standard on review should not be the reasonableness of the use permitted, but the reasonableness of the use proposed. Even if present zoning is not unreasonable or confiscatory, a proposed use should be permitted if reasonable under all the circumstances.

3. The record establishes that the proposed use is reasonable, and it should be allowed.

Williams, J., also wrote to affirm the decision of the Court of Appeals, but would hold that:

1. Plaintiffs have not sustained their burden to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of the property and that if the ordinance is enforced the consequent restrictions on the property preclude its use for any purpose to which it is reasonably adapted.

2. The Grand Blanc Township exclusionary zoning ordinance unlawfully and unreasonably discriminates and therefore is invalid.

3. Plaintiffs may use their land for a mobile-home park without inhibition or restriction by the invalid ordinance.

M.S. Coleman, J., dissented on the grounds that:

1. Plaintiffs have not sustained their burden to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of the property and that if the ordinance is enforced the consequent restrictions on the property preclude its use for any purpose to which it is reasonably adapted.

2. It is unwise and without sound basis in law to elevate to the constitutional status of equal protection of the laws what percentage of land in a governmental unit must be zoned for mobile homes, and it cannot be said that mobile-home owners

or legitimate businesses are excluded or that plaintiffs have a constitutional right to place a mobile-home park on their property.

3. Respect for those persons charged with the responsibility of determining the zoning within their community required the trial judge to abstain from interceding absent a showing that there has been an unreasonable and arbitrary action.

47 Mich App 684; 209 NW2d 803 (1973) affirmed.

OPINION OF THE COURT

1. ZONING—ORDINANCES—EXCLUDED USES—REZONING—MOBILE-HOME PARKS.

On proof that a community has excluded a legitimate use, such as mobile-home parks, it does not necessarily become obliged to grant a request for rezoning to permit that use, because the land sought to be rezoned may not be suitable for development for the excluded use.

2. ZONING—ORDINANCES—AMENDMENT—REASONABLENESS.

Even if present zoning is not unreasonable or confiscatory, a proposed use should be permitted if reasonable under all the circumstances.

SEPARATE OPINION

WILLIAMS, J.

3. ZONING—PRESUMPTIONS—BURDEN OF PROOF.

*A zoning ordinance will be presumed valid, with the burden on the party attacking it to show it to be an arbitrary and unreasonable restriction upon the owner's use of his property.*

4. ZONING—ORDINANCES—PRESUMPTIONS—BURDEN OF PROOF—APPEAL AND ERROR.

*The principles covering whether single-family-residence zoning of property is valid are (1) that there is no reasonable governmental interest being advanced by the present zoning classification itself, or (2) that an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question; these two principles are operationally tested by the following four rules: (1) the ordinance comes clothed with every presumption of validity, (2) it is the burden of the party attacking to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property, and it must appear that the clause attacked is an arbitrary fiat,*

a whimsical ipse dixit, and that there is no room for a legitimate difference of opinion concerning its reasonableness, (3) to sustain an attack on a zoning ordinance, an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purpose to which it is reasonably adapted, and (4) the Court is inclined to give considerable weight to the findings of the trial judge in equity cases.

5. Zoning—Confiscation—Valuation—Constitutional Law.

Although plaintiffs' property might have been worth more if zoned for mobile homes, that alone is not sufficient to establish confiscation of property in violation of the Fourteenth Amendment (US Const, Am XIV).

6. Zoning—Burden of Proof—Findings of Fact—Ordinances.

Plaintiffs did not sustain their burden to prove affirmatively that a zoning ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property and to show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purpose to which it is reasonably adapted where the trial court found: (1) an earlier township supervisor had suggested this property would be a good site for a mobile-home park; (2) the present value of the park would be quadrupled, if zoned to permit a modern mobile-home park, subject to sizable investment being made for improvements for this purpose; (3) although there is no large present demand for single-family housing in the site at issue, it is located within reasonable proximity to other single-family developments and has easy access to the superhighway I-475; (4) adjacent property owners include one who has no present plans for developing the piece as a single-family development and in the event that the land in question were used as a trailer site, the adjoining property owner would seek the use of its property for high-density purposes; (5) the property contains municipal sewer and water services which are available to the site as well as access to a main county road; (6) there has been large expression by citizens of Grand Blanc Township in opposition to rezoning that would permit the plaintiffs to create a trailer park in this site; (7) there are 23 acres of land occupied by mobile-home parks in Grand Blanc Township; rezoning has been granted existing parks to permit their enlargement; the existing zoning ordinance of the township provides for mobile-home parks and the proposed land use of the township contains 300 acres of land where mobile-home parks will be allowed, and this plan has been adopted by the township board; (8) the plaintiffs paid

*approximately $350 an acre for their land and at the present time it has a price on the market, under present zoning, of approximately $1,500 an acre.*

7. ZONING—REASONABLENESS—MASTER PLAN—PRESUMPTIONS.

*The presumption of reasonableness accorded a validly adopted master plan for land use does not apply to a master plan which is in the process of completion but which has not yet been passed on by the community and its legislative body.*

8. ZONING—ORDINANCES—EXCLUDED USE—CONSTITUTIONAL LAW.

*An ordinance which* totally *excludes from a municipality a use recognized by the constitution or other laws of Michigan as legitimate also carries with it a strong taint of unlawful discrimination and a denial of equal protection of the law as to the excluded use.*

9. ZONING—MOBILE-HOME PARKS—LAND USE—DISCRIMINATION—CONSTITUTIONAL LAW.

*Mobile-home parks, while not a guaranteed constitutional use, are necessary to the essential human problem of low-cost shelter; legislatively and judicially, as a lawful land use, they deserve protection from discrimination by exclusionary zoning.*

10. ZONING—TRAILER PARKS—PROHIBITION—LAND USE—REASONABLENESS.

*Prohibition or almost prohibition of trailer parks is invalid either where there is reasonable area available for such development or where other uses are unreasonable for a given property where a trailer park would be a reasonable use.*

11. ZONING—ORDINANCES—MASTER PLAN—MOBILE HOMES—EXCLUSIONS—TOWNSHIPS—EQUAL PROTECTION.

*A township's dedication of 1/10 of 1% of the area of the township to mobile homes, plus refusal of all new applications beyond two existing parks and the illusory and burdened nature of proposed additional acreage zoned to allow mobile-home use is tantamount to exclusion, where mobile-home parks would share the additional acreage with other transitional uses, including offices and industrial research parks, but where the proposed master plan does not call for municipal sewer and water services in those areas; where in light of the availability of land in the township such virtual exclusion is unreasonable and without justification, the township's exclusionary zoning ordinance system unlawfully and unreasonably discriminates and therefore is invalid.*

12. ZONING—INVALID ORDINANCE—EFFECT.

*The invalidity of a township zoning ordinance as to mobile-home park use because of its unreasonable exclusion of such parks leaves plaintiff landowners seeking to use their land for a mobile-home park without any inhibition or restriction on exercising that use.*

SEPARATE OPINION

M. S. COLEMAN, J.

13. ZONING—ORDINANCES—BURDEN OF PROOF—ARBITRARINESS—UN-
    REASONABLENESS.

*Plaintiffs did not sustain their burden to prove affirmatively that a zoning ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property and to show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purpose to which it is reasonably adapted.*

14. ZONING—MOBILE HOMES—LAND USE—TOWNSHIP BOARDS—LOCA-
    TION OF MOBILE HOMES.

*It would be most unwise for the Supreme Court to assume the responsibility of determining what percentage of land in any governmental unit must be zoned for mobile homes; it is particularly unwise for the Supreme Court to tell a township board where the added acreage for mobile homes should be located.*

15. ZONING—MOBILE-HOME PARKS—TOWNSHIPS—LAND USE—EXCLU-
    SIONS—ORDINANCES.

*A township's present and proposed practices with regard to mobile homes was not "tantamount to exclusion" where 23 acres of the township are actually now used for mobile-home parks with rezoning providing for enlargement of those parks and the existing zoning ordinance provides for mobile homes and the township board has approved a land-use plan providing 300 acres of land for mobile-home parks.*

16. ZONING—APPEAL AND ERROR—SUPREME COURT—DE NOVO REVIEW
    —FINDING OF TRIAL JUDGE—EVIDENCE

*The Supreme Court reviews zoning cases* de novo, *but gives great weight to the findings and conclusions of the trial judge who had the most immediate and constant opportunity to observe and react to the evidence; such an opportunity is important.*

17. ZONING—SUPREME COURT—ORDINANCES—JUDICIAL FUNCTION—
LEGISLATIVE FUNCTION.

> *The Supreme Court does not sit as a superzoning commission; it
> is not the Court's function to approve a zoning ordinance as to
> wisdom or desirability, and for alleged abuses involving such
> factors the remedy is the ballot box, not the courts; the Su-
> preme Court does not substitute its judgment for that of the
> legislative body charged with the duty and responsibility in the
> premises.*

18. ZONING—DETERMINATION OF ZONING—REASONABLENESS—ARBI-
TRARINESS—FINDING OF TRIAL JUDGE.

> *Respect for those persons charged with the responsibility of
> determining the zoning within their community requires the
> trial judge in a zoning case to abstain from interceding absent
> a showing that there has been an unreasonable and arbitrary
> action taken by those same authorities.*

*Richard A. Hamilton (John D. Nickola,* of coun-
sel) for plaintiffs.

*Lyndon J. Lattie,* for defendants.

LEVIN, J. We affirm the Court of Appeals for the
reasons stated in our opinion in *Sabo v Monroe
Twp, ante,* 394 Mich 531; 232 NW2d 584 (1975).

T. G. KAVANAGH, C. J., and J. W. FITZGERALD, J.,
concurred with LEVIN, J.

WILLIAMS, J. This case involves two zoning is-
sues. The first issue is whether single-residence
zoning in a particular area is valid against a
property owner desiring to use his property for a
mobile-home-park site. The second issue is whether
there is an unlawful use of the zoning power
where a suburban township has by zoning ex-
cluded mobile homes from all but 1/10 of 1% of
the area of the township.

These two issues cause us to revisit *Kropf v
Sterling Heights,* 391 Mich 139; 215 NW2d 179
(1974), and *Brae Burn, Inc v Bloomfield Hills,* 350
Mich 425; 86 NW2d 166 (1957), on the first issue;

and *Gust v Canton Twp,* 342 Mich 436; 70 NW2d 772 (1955), and *Dequindre Development Co v Charter Twp of Warren,* 359 Mich 634; 103 NW2d 600 (1960) on the second issue.

## I. Facts

In 1962, plaintiffs Nickola purchased property in the northwest portion of Grand Blanc Township, expecting to use it as a mobile-home park. Although the land was zoned for single residences, plaintiffs, relying on the representation of a now deceased township supervisor that there would be no objection to that use,[1] petitioned[2] for rezoning one year later. After two years, the township advised plaintiffs it was denying the petition because the premises had not yet been served by sanitary sewers and the Michigan Highway Department had still to acquire land for the I-475 expressway right-of-way.

In April, 1969, following completion of both land acquisition and sewer system, plaintiffs again petitioned for the zoning ordinance amendment and, after two public hearings, received a favorable recommendation from the Grand Blanc Zoning Board. The Co-Ordinating Zoning Committee of the Genesee County Board of Supervisors, which makes a technical review of all rezoning proposals, recommended to the township board:

---

[1] Plaintiffs claim the supervisor thought there would be no objection to the proposed use because the property would border the proposed I-475 expressway, had a creek around it, and dense woods behind it. Later, plaintiffs received signatures of approval for the project from 11 of 13 surrounding property owners, the other 2 of whom, they said, had no objection. The Court of Appeals correctly found the township supervisor did not bind the township. *Blackman Twp v Koller,* 357 Mich 186; 98 NW2d 538 (1959).

[2] In 1963 plaintiffs owned 40 acres and added approximately 20 more when they repetitioned in 1969.

"Although this particular rezoning request would allow a higher density use than would the present zoning, the general character of the land would not be changed. (That is, the use would still be residential.)

"In a time when the price of land keeps rising, it becomes necessary to seek ways to bring the cost of housing within the range of a great many people who could not otherwise afford a house on even a 9,600 square foot lot."

The Grand Blanc Township Board, however, at a meeting attended by a vocal and hostile audience, unanimously rejected the request, giving as reasons: unsatisfactory ingress and egress; that the area was predominantly single family in character and such a zoning change would violate the township's land-use plan; that the proposed mobile-home park would be too close to a single-family subdivision and would adversely affect it; that plaintiffs' petition was brought under the old zoning ordinance,[3] and that the amendment was not good, practical zoning.

Recall petitions alleging board members were insensitive to citizens' desire for controlled growth were circulated prior to that meeting, and numerous phone calls and newspaper articles reporting opposition to the rezoning came to the board members' attention. No recall petition was ever filed, and board members testified the threats did not affect their votes.

The park-site plan called for 319 lots, with retention of the wooded area to serve as a buffer between the property and the single-family subdi-

---

[3] Subsequent to denial of plaintiffs' petition, the Grand Blanc Township zoning ordinance was amended to remove mobile-home parks from heavy commercial to a rural trailer-park classification. Testimony at trial indicated that if plaintiffs' petition had been approved, it would have been simple to change the language to reflect the new classification.

visions to the south. The I-475 expressway abuts
the property on the west, and Maple Avenue, now
widened from two to four lanes, is directly north.
Land to the east is presently vacant, but single-
family developments are planned. Although that
developer testified that creation of a mobile-home
park on the disputed property might cause him to
change his plans and build multiple dwellings or
duplexes, he did not indicate that the value of his
property would be reduced. Adjacent property to
the northeast, in what was a different township,
but now the City of Burton, is zoned multiple
family.

Testimony as to the value of the property was
contradictory, but apparently, plaintiffs paid ap-
proximately $350 an acre for their land, which,
under present zoning, is worth about $1,500 an
acre. Plaintiffs contend that the property would be
worth around $2,500 per acre zoned for mobile-
home parks, and $35,000 per acre if $3,500 per
acre were spent to develop seven mobile-home sites
per acre.

The Grand Blanc Township master land-use
plan had not been accepted as of the date of
rejection of plaintiffs' petition, and the plan in fact
was not published until April, 1970. The planners
apparently completed the residential aspect (about
70% of the township) as of June 1969. They
claimed the township had adopted the text, zoning
text and zoning map, but they were uncertain
about the date. The township itself apparently had
not as yet accepted or adopted the residential text
and map as proposed.[4]

---

[4] According to the township treasurer, the township board went on
record opposing the 9,600 square-foot-lot minimum recommended by
the planner, but would accept 12,000 square feet. However, the
planning representative, in his testimony, added to the confusion by
referring to 9,600 square feet as the basic premise of the plan, and
this is the way it appears in the only published version.

The planner claimed, however, that a large part of the plan was already implemented because much of the township was already residential. As of the time of trial, and as far as we can determine, as of the present time, the township had not amended its zoning ordinance, other than in response to petitions by property owners to conform with the proposed master plan.

As a result of one of these amendments, the property directly to the west of plaintiffs', but separated from it by the expressway, was rezoned multiple-family from single-family residence by the township board, without the zoning board's recommendation. The two properties were characterized by witnesses as almost identical as far as type of land, location and surrounding development were concerned, except for the expressway in between. Access to both properties would be by Maple Avenue.[5]

Under the proposed master plan, mobile-home parks would be placed in areas of transitional land use. These are largely in the southern portion of the township in about 300 acres planned to accommodate industrial and research parks.

At the present time, only two mobile-home parks are in the township, one of which, owned by plaintiffs, is slightly east of the subject property. Both parks are relatively old, having been built between 1953 and 1956. Until the present time, no

---

[5] Plaintiffs allege that there might have been a conflict of interest, because a brother of the township board member most vocal in his opposition to the trailer park was attorney for owners of this rezoned property. Although this attorney appeared at the zoning board meeting, he did not address the township board. It is also unclear whether plaintiffs would have wanted the township board member to disqualify himself from the vote on their petition, on the multiple-family issue, or on both. In view of the unanimity of the vote on their petition, it is difficult to see how one vote would have made a difference. As for the other vote, plaintiffs do not have standing to object to it, nor is the propriety of that rezoning before us.

application for a new trailer park (approximately five have been requested) and enlargement of only one existing park has been approved since then.

The trial court found plaintiffs did not defeat the presumption of reasonableness of the township's ordinance.

` The trial court used the test we outlined in *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d 166 (1957). A zoning ordinance will be presumed valid, with the burden on the party attacking it to show it to be an arbitrary and unreasonable restriction upon the owner's use of his property.

The Court of Appeals reversed unanimously on June 25, 1973 holding that 1) the consent of the former township supervisor and the protests of the residents have no legal significance, and 2) the ordinance has no reasonable relationship to the township's morals, health or safety, especially in view of the health and safety requirements imposed upon mobile-home parks by statute. 47 Mich App 684; 209 NW2d 803 (1973). We granted leave on November 29, 1973. 390 Mich 806.

## II. Is Single-Family Residence Zoning of Plaintiffs' Property Valid?

### A. Controlling Law

The principles and tests covering whether single-family-residence zoning of plaintiffs' property is valid is detailed in *Kropf* which analyzes *Brae Burn, Inc.*

Two important principles are set forth:

"[F]irst, that there is no reasonable governmental interest being advanced by the present zoning classification itself * * * or

"[S]econdly, that an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question." 391 Mich 139, 158.

These two principles are operationally tested by the following four rules. The four rules are:

1. " 'The ordinance comes to us clothed with every presumption of validity.' " 391 Mich 139, 162, quoting from *Brae Burn, Inc.*

2. " '[I]t is the burden of the party attacking to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property * * * It must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness.' " 391 Mich 139, 162, quoting *Brae Burn, Inc.*

3. "Michigan has adopted the view that to sustain an attack on a zoning ordinance, an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purpose to which it is reasonably adapted." 391 Mich 139, 162–163.

4. " 'This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases.' " 391 Mich 139, 163 quoting *Christine Building Co v City of Troy,* 367 Mich 508, 518; 116 NW2d 816 (1962).

*B. Plaintiffs' Case*

Plaintiffs' case that the single-family-residence zoning in the area is invalid as to their property rests on three points:

1. The area no longer is a single-family-residence area and there is no demand for single-family-residences.

2. Plaintiffs' property is more valuable zoned for mobile homes.

3. Eleven adjacent property owners signed plaintiffs' rezoning petition.

## C. Application of Law to Plaintiffs' Property

As Chief Justice T. M. Kavanagh said, quoting Justice Smith in *Brae Burn, Inc,* 350 Mich 425, 430:

" '[T]his Court does not sit as a superzoning commission.' " 391 Mich 139, 161.

We are therefore, as rule 4 says, "inclined to give considerable weight to the findings of the trial judge". These findings are not long and are here set forth in full.

1) An earlier township supervisor had suggested this property would be a good site for a mobile-home park.

2) The present value of the park would be quadrupled, if zoned to permit a modern mobile-home park, subject to sizable investment being made for improvements for this purpose.

3) Although there is no large present demand for single-family housing in the site at issue, it is located within reasonable proximity to other single-family developments and has easy access to the superhighway I-475.

4) Adjacent property owners include one who has no present plans for developing the piece as a single-family development. In the event that the land in question were used as a trailer site, the adjoining property owner would seek the use of its property for high-density purposes.

5) The property contains municipal sewer and water services which are available to the site as well as access to a main county road.

6) There has been large expression by citizens of

Grand Blanc Township in opposition to rezoning that would permit the plaintiffs to create a trailer park in this site.

7) There are 23 acres of land occupied by mobile-home parks in Grand Blanc Township; rezoning has been granted existing parks to permit their enlargement. The existing zoning ordinance of the township provides for mobile-home parks and the proposed land use plan of the township contains 300 acres of land where mobile-home parks will be allowed, and this plan has been adopted by the township board.

8) The plaintiffs paid approximately $350 an acre for their land and at the present time it has a price on the market, under present zoning, of approximately $1,500 an acre.

While these findings might have been more specifically directed to the plaintiffs' case they are adequate enough to determine that plaintiffs have not sustained their burden under rules 2 and 3 above. Finding 3 covers their point 1. Findings 2 and 8 cover their point 2. In addition, although plaintiffs' property might have been worth more if zoned for mobile homes, that alone is not sufficient to establish confiscation of property in violation of the Fourteenth Amendment. *Village of Euclid v Ambler Realty Co,* 272 US 365; 47 S Ct 114; 71 L Ed 303; 54 ALR 1016 (1926); *Patchak v Lansing Twp,* 361 Mich 489; 105 NW2d 406 (1960); *Paka Corp v City of Jackson,* 364 Mich 122, 127; 110 NW2d 620 (1961). Finding 7 covers point 3.

With these findings, the trial court correctly relied on *Brae Burn* to hold that plaintiffs failed to maintain their burden "to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property".

In passing, the Court of Appeals' analysis, "we cannot possibly see how a mobile home park vis-a-vis single family residences can possibly affect

Grand Blanc Township's morals, health or safety on the land in question", 47 Mich App 684, 689; 209 NW2d 803, whether accurate or inaccurate, is not in point. It puts the shoe on the wrong foot. The issue is whether single-family-residence zoning is a proper exercise of the police power.

### III. ADOPTION/NON-ADOPTION OF MASTER PLAN

The trial court's opinion refers to a proposed land use plan and then says "and this plan has been adopted by the Township Board". Factual Conclusion 7. We give great weight to a trial court's finding but in this case we must look further. The township's own brief says "the Defendant-Appellant Township Board adopted the plan [master development plan] November 11, 1970". However, the complaint in this case was filed February 11, 1970. Consequently, the November 11, 1970 adoption of the plan does not directly influence this case. Furthermore, proof of adoption is not on record, *i.e.,* by resolution, by enactment of an appropriate zoning ordinance, or what.

On the other hand it is clear that the township's answer to plaintiffs' complaint admits "the township's master development plan had not been adopted". Count 1, XII. See also the township treasurer's testimony to the same effect. Furthermore, James Galbraith, a professional land planner, testified that the Grand Blanc Regional Planning Commission had "accepted" the plan recommended by his firm but that the Grand Blanc Township Board had not fully adopted the plan.

We conclude, therefore, that defendants did not adopt a master plan prior to the commencement of this lawsuit.

This Court did say in *Biske v City of Troy,* 381 Mich 611, 615; 166 NW2d 453 (1969):

"Before we may credit any such plan as being 'of itself evidence of its reasonableness', we must first determine whether that plan is *in fact* a validly adopted master plan." (Emphasis in *Biske.)*

We then agreed that the community and legislative body should pass on the plan before according it a presumption of reasonableness.

Here the township board was apparently running with the hare and hunting with the hounds because at one and the same time it had not adopted a master plan, but nonetheless based its refusal to rezone in answer to plaintiffs' petition on the ground that:

"Such zoning change would be in violation of the Township master land use plan which designates the property single family."

The Michigan Legislature has strongly endorsed planning to promote public health, safety and general welfare.[6] This Court has also recognized

---

[6] MCLA 125.322; MSA 5.2963 (102) states:

"The purpose of plans prepared pursuant to this act shall be to promote public health, safety and general welfare; to encourage the use of resources in accordance with their character and adaptability; to avoid the overcrowding of land by buildings or people; to lessen congestion on public roads and streets; to facilitate provision for a system of transportation, sewage disposal, safe and adequate water supply, recreation and other public improvements; and to consider the character of each township and its suitability for particular uses judged in terms of such factors as the trend in land and population development."

MCLA 125.273; MSA 5.2963(3) notes: "The provisions of the zoning ordinance shall be based upon a plan designed to promote the public health, safety, morals and general welfare, to encourage the use of lands in accordance with their character and adaptability and to limit the improper use of land, to avoid the overcrowding of population, to provide adequate light and air, to lessen congestion on the public

the importance of planning. In *Padover v Farmington Twp,* 374 Mich 622, 639; 132 NW2d 687 (1965), Justice Adams said:

"Unless the pattern is set and followed, proper growth can never materialize. The alternative is to pay the price in crime, juvenile delinquency, inadequate sewers, inadequate roads, inadequate schools, inadequate parks, and, worst of all, inadequate human beings —a pattern that has been all too clearly evident upon the American scene. A city, village, or township, is entitled to work out a better destiny for itself under such clear statutory authority."

Grand Blanc Township is to be commended on such steps as it has taken toward activating a proper master plan and should be encouraged to complete its work.

We recognize the inchoate state of the township's master plan precludes our accepting it with the dignity due a legislatively enacted zoning ordinance on the basis of good planning. However, we base our decision on the exclusion issue next to be discussed.

IV. Exclusion of Mobile Homes from Township

*A. Applicable Law*

*Kropf* stated a third general principle relative to zoning:

roads and streets, to reduce hazards to life and property, to facilitate adequate provision for a system of transportation, sewage disposal, safe and adequate water supply, education, recreation and other public requirements, and to conserve the expenditure of funds for public improvements and services to conform with the most advantageous uses of land, resources and properties; and shall be made with reasonable consideration, among other things, to the character of each district, its peculiar suitability for particular uses, the conservation of property values and natural resources, and the general and appropriate trend and character of land, building and population development."

"On its face, an ordinance which *totally* excludes from a municipality a use recognized by the constitution or other laws of this state as legitimate also carries with it a strong taint of unlawful discrimination and a denial of equal protection of the law as to the excluded use." 391 Mich 139, 155–156.[7]

A number of Michigan decisions have said that zoning exclusion of a legitimate use is unlawful. There is no case that alone fully controls the instant one, but there are several that have elements which together support the judgment that Grand Blanc Township's ordinance system is an improper use of the zoning power as applied against mobile-home users and mobile-home park operators.

The leading exclusion case involves an ordinance which, although on its face allowed churches and schools, was found by the trial judge to in fact exclude them from the entire village. *Roman Catholic Archbishop of Detroit v Village of Orchard Lake,* 333 Mich 389, 391; 53 NW2d 308 (1952). This Court noted that our constitution encourages religion and schools and then said:

"Hardly compatible is this with a presumption that exclusion of school and church from an entire municipality is conducive to public health, safety, morals or the general welfare, a presumption which we decline to indulge." (333 Mich 389, 394.)

*Archbishop,* of course, dealt with a constitutionally supported use. While shelter and food are not specially enumerated constitutional concerns like

---

[7] While *Kropf* stressed *"totally"* it did so to correct the Court of Appeals that had erroneously relied on *Bristow v City of Woodhaven,* 35 Mich App 205; 192 NW2d 322 (1971), which in turn had erroneously relied on *Roman Catholic Archbishop of Detroit v Village of Orchard Lake,* 333 Mich 389; 53 NW2d 308 (1952), which was indeed a case of *total* prohibition as hereinafter discussed.

religion and schools, nonetheless both also are essential to the human condition. As such they may be among the unenumerated rights still "retained by the people". Const 1963, art 1, § 23. In any event, "dwelling accommodations for persons of low income" are legislatively recognized as a matter of "public interest". MCLA 125.601 *et seq.;* MSA 5.3057(1) *et seq.,* and Justice Dethmers, who also spoke for this Court in *Archbishop,* took note that "trailer camps may lawfully be operated in Michigan" under a licensing statute. *Gust v Canton Twp,* 342 Mich 436, 438; 70 NW2d 772 (1955). In short, *Archbishop* held zoning invalid that excluded a constitutionally guaranteed use. While mobile-home parks are not a guaranteed constitutional use, they are necessary to the essential human problem of low-cost shelter. Legislatively and judicially, as a lawful land use, they deserve protection from discrimination by exclusionary zoning.

Turning to decisions more closely in point, this Court has in two cases invalidated zoning prohibiting mobile-home parks in a municipality.[8] In one of them,[9] the opinion itself shows there already was, as in the instant case, trailer park area so that this Court has acted in a case of not only absolute exclusion but also something less than total exclusion.

In *Gust v Canton Twp,* 342 Mich 436, 438; 70 NW2d 772 (1955), this Court through Justice Dethmers affirmed a trial court decree "holding the ordinances [of an open, undeveloped and agricul-

---

[8] *Gust v Canton Twp,* 342 Mich 436; 70 NW2d 772 (1955); *Dequindre Development Co v Charter Twp of Warren,* 359 Mich 634; 103 NW2d 600 (1960). A third case might be *Gundersen v Bingham Farms,* 372 Mich 352; 126 NW2d 715 (1964), where we held mobile-home parks may not be completely prohibited by resort to a single zoning classification.

[9] *Dequindre,* 359 Mich 634, 636, 640.

tural township] 'unconstitutional and void insofar
as they prohibit the establishment, maintenance
and operation of a trailer coach park * * * ' ",
where "the ordinances and record disclose the
exclusion of trailer camps from the entire town-
ship". This Court looked to the then existing cir-
cumstances of open, undeveloped land and refused
to speculate with the township argument as to the
utility and validity of an exclusionary ordinance
under conditions 20 to 25 years hence. This Court
said:

"[T]he nature and extent of the development of the
township, or lack of it, are such that it cannot be said
* * * prohibiting trailer camps therefrom bears a real
and substantial relationship to present public health,
safety, morals or general welfare. It is not seriously
contended that it does. To so hold would be tantamount
to declaring trailer camps detrimental to the public
health, safety, morals or general welfare under every
condition and circumstance and on that account subject
to exclusion from every area in the State by local
governing bodies. That would hardly square with the
legislative intent expressed in the above act authorizing
their operation in Michigan." 342 Mich 436, 439.

The *ratio decidendi* in *Gust* is generally applica-
ble in the instant case. While Grand Blanc Town-
ship is obviously not as undeveloped as Canton
Township was, there is still available land for
development. The significant difference between
*Gust* and the instant case is that the exclusion in
the instant case is not absolute as there is a token
area available to mobile homes. For that reason
the next discussed case is significant.

An important feature of *Dequindre Development
Co v Charter Twp of Warren,* 359 Mich 634; 103
NW2d 600 (1960), is that it accounts for the differ-
ence between *Gust* and the instant case in that in

*Dequindre* the exclusion was, as in the instant case, not absolute. In *Dequindre* this Court affirmed a decree invalidating an ordinance which "in effect, prohibited trailer parks by making no provision therefor" (359 Mich 634, 638), although it is clear in the opinion that there already was some trailer-park area in existence. 359 Mich 634, 636, 640. Furthermore, in *Dequindre* unlike *Gust* the township was already considerably developed. In fact that was a further part of the *ratio decidendi,* namely that the single-family-residence zoning in light of the surrounding area and circumstances was unreasonable.

Speaking for this Court in *Dequindre,* Justice Black said:

"These conditions * * * afford no justification for * * * the outright prohibition of trailer coach parks by the selective administration of a local ordinance." 359 Mich 634, 640.

Also arising in Warren are two cases reaching the same conclusion. *Knibbe v City of Warren,* 363 Mich 283; 109 NW2d 766 (1961), and *Lacey v City of Warren,* 7 Mich App 105; 151 NW2d 245 (1967), with present Justice J. W. Fitzgerald writing.

*Gust* and *Dequindre* support the conclusion that prohibition or almost prohibition of trailer parks is invalid where either there is reasonable area available for such development[10] or where other uses are unreasonable for a given property where a trailer park would be a reasonable use.[11]

---

[10] *Gust. And see June v City of Lincoln Park,* 361 Mich 95; 104 NW2d 792 (1960), which upheld an ordinance limiting mobile-home parks to areas previously zoned for this use jointly with other uses, even though those areas were already fully occupied, because the city was already developed. Furthermore, the plaintiff had previously testified the land in question should be zoned residential just five months before.

[11] *Dequindre.*

## B. Plaintiffs' and Defendants' Cases

Plaintiffs, landowners, in their brief confuse the second and third principles stated in *Kropf.* The second principle relates to "arbitrary * * * exclusion of other types of legitimate land use *from the area in question*" (391 Mich 139, 158) and the third principle relates to exclusion of a legitimate land use *"from a municipality"* (391 Mich 139, 156). (Emphasis supplied.) Their factual argument, however, is a cogent predicate for the conclusion that there was third principle exclusion "from a municipality" and is herewith in pertinent part set out:

"It is clear from the record that Grand Blanc Township discriminates against mobile home parks. Certainly this type of use is lawful and legitimate. Why then should this use be limited to twenty-five *(sic)* acres in thirty-six square miles? This is gross discrimination. Why should this use be pushed into the undeveloped areas of the Township without municipal sewer and water services as proposed by the unadopted master plan? This is just further evidence of Defendants' attitudes; *not in our Township."* (Emphasis plaintiffs'.)

Plaintiffs in brief rested their case on two points:

1) Exclusion from the township of mobile homes.
2) Failure of township to adopt a plan, and reliance on *Biske v City of Troy,* 381 Mich 611, 166 NW2d 453 (1969), which refuses to grant the presumption of reasonableness to a master plan not adopted by the municipality's legislative body (381 Mich 611, 615.)

Defendants in their answer largely relied on a finding of the trial court as follows:

"There are twenty-three acres of land occupied by mobile home parks in Grand Blanc Township, rezoning has been granted existing parks to permit their enlargement, the existing zoning ordinance of the township

provides for mobile home parks and the proposed land use plan of the township contains three hundred acres of land where mobile home parks will be allowed and this plan has been adopted by the Township Board."

## C. Exclusion?

In the instant case, the trial court found that defendant township devotes 23 acres of its 36 square miles (23,040 arces) to mobile-home parks. All applications for new mobile-home parks have been refused, at least since 1959, and only one of the two existing parks has been permitted to expand.

Although 300 acres in the southern portion of the township are labeled "transitional" in the proposed master plan, mobile-home parks will share this acreage with other transitional uses, including offices and industrial research parks. The proposed plan, moreover, does not call for municipal sewer and water services in those areas.[12]

We consider the 1/10 of 1% dedication to mobile homes, plus the refusal of all new applications beyond the two existing parks and the illusory and burdened nature of the *proposed* additional acreage, tantamount to exclusion,[13] certainly as much

[12] Furthermore, in the 1973 Grand Blanc Township zoning ordinance submitted to this Court following oral argument, it can be seen that no portion of this 300 acres is zoned for mobile-home parks, while other uses including multiple-family residential, research park, light industrial and local business, as well as numerous single-family residential districts, are provided for. In fact, the only areas zoned for mobile-home park use are the two previously existing parks, still totaling only 23 acres.

[13] *Kropf,* 391 Mich 139, 155–156, speaks of *"total"* prohibition in criticizing *Bristow v City of Woodhaven,* 35 Mich App 205; 192 NW2d 322 (1971). However, the degree of exclusion in this case we consider tantamount to such total exclusion. In any event, this case considers such virtual exclusion in the light of unlawful discrimination and not as justifying shifting the burden of proof as *Bristow* did.

exclusion as in *Dequindre.* Furthermore, we believe that in light of the availability of land in Grand Blanc Township such virtual exclusion is unreasonable and without justification. As a consequence, we hold that Grand Blanc Township exclusionary zoning ordinance system unlawfully and unreasonably discriminates and therefore is invalid.

## V. CONCLUSION

First, the plaintiffs failed to overcome the *Kropf* presumption that the township residential zoning of their property was valid. Second, because of a different and dispositive issue this Court does not resolve the debatable fact question whether indeed the township residential zoning was confiscatory in the case of plaintiffs' property.

Third, the township's unreasonable exclusion of mobile-home parks makes its zoning ordinance invalid vis-a-vis that use. This Court does not and will not zone or rezone. However, this invalidity leaves plaintiffs without any inhibition or restriction from exercising the requested use of the land in issue.

This decision applies to this case and all pending cases that have raised and have preserved the same issue. Likewise after 90 days from the date of issuance of this opinion, this decision will apply to all such future cases provided that the township shall not have properly remedied this deficiency in its master plan and zoning ordinance.

The Court of Appeals' reversal of the trial court is affirmed but for different reasons. The matter is remanded to the trial court for further action not inconsistent with this opinion. Costs to plaintiffs.

M. S. Coleman, J. *(concurrence in part; dissent in part).* I endorse Justice Williams' conclusion in response to the first issue "that plaintiffs have not sustained their burden" as required by *Kropf v Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974), and *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d 166 (1957).

The response to the second issue does not receive my endorsement. It is said that present and proposed practices with regard to mobile homes is "tantamount to exclusion" and "that in the light of the availability of land in Grand Blanc Township such virtual exclusion is unreasonable and without justification". The opinion concludes that the zoning system "unlawfully and unreasonably discriminates and therefore is invalid".

It would be most unwise for this Court to assume the responsibility of determining what percentage of land in any governmental unit—whether Grand Blanc Township or the City of Detroit—must be zoned for mobile homes. It is particularly unwise for us to tell the township board where the added acreage for mobile homes should be located.[1]

One is necessarily led to question whether the same rationale would then have to apply to apartment buildings, condominiums and untold numbers of other land uses. To compound the problem, in each instance, this Court might be called upon to establish what percentage of any given usage would or would not be tantamount to exclusion.

---

[1] Also, I cannot say that mobile-home owners or legitimate businesses are excluded from the township or that plaintiff has a constitutional right to place a mobile-home park on his property. Neither can I find that plaintiffs' property is, in effect, being taken without compensation. They paid $350 per acre. It is now worth $1500 per acre. The fact that they cannot quadruple the present value of the land has no constitutional or statutory implication under these circumstances.

The prospect of this Court becoming a super zoning commission is rendered more than probable.

In this case the trial judge found as fact that 23 acres of Grand Blanc Township are actually now used for mobile-home parks, and rezoning has provided for enlargement of those parks. Importantly, however, the existing zoning ordinance provides for mobile homes and the township board has approved a land use plan providing 300 acres of land for mobile-home parks. It is important to note, as did the trial judge, that this is not a situation where the governmental institution has sought to deny all mobile-home parks within its community. Compare *Roman Catholic Archbishop of Detroit v Village of Orchard Lake,* 333 Mich 389; 53 NW2d 308 (1952).

After extensive testimony, the trial judge rendered an opinion which made factual findings and drew legal conclusions. Compare *Quigley v Dexter Twp,* 390 Mich 707; 213 NW2d 166 (1973). For his standard of review, the trial judge cited language from *Brae Burn* which was quoted with approval in *Kropf.* It was said that:

"[T]he ordinance comes to us clothed with every presumption of validity, *Hammond v B. H. Building Inspector,* 331 Mich 551 [50 NW2d 155 (1951)], and it is the burden of the party attacking to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property. *Janesick v City of Detroit,* 337 Mich 549 [60 NW2d 452 (1953)]. This is not to say, of course, that a local body may with impunity abrogate constitutional restraint. The point is that we require more than a debatable question. We require more than a fair difference of opinion. It must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness."

The trial judge determined "that the plaintiffs have not carried or met their burden". The court found "no indication that the action taken by the township authorities is arbitrary or unreasonable and that the zoning ordinance is an unreasonable and arbitrary restriction upon the owner's use of his property".

It is generally said that we review these cases *de novo.* However, as in so many other situations, we give great weight to the findings and conclusions of the trial judge. After all, he or she had the most immediate and constant opportunity to observe and react to the evidence. We properly regard such opportunity as important. See *Christine Building Co v City of Troy,* 367 Mich 508; 116 NW2d 816 (1962), and *Kropf.*

It is profitable to review frequently the following philosophy found in *Brae Burn* and repeated in *Kropf:*

"In view of the frequency with which zoning cases are now appearing before this Court, we deem it expedient to point out again, in terms not susceptible of misconstruction, a fundamental principle: this Court does not sit as a super-zoning commission. Our laws have wisely committed to the people of a community themselves the determination of their municipal destiny * * * . With the wisdom or lack of wisdom of the determination we are not concerned. The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life. Let us state the proposition as clearly as may be: It is not our function to approve the ordinance before us as to wisdom or desirability. For alleged abuses involving such factors the remedy is the ballot box, not the courts. We do not substitute our judgment for that of the legislative body charged with the duty and responsibility in the premises."

I agree with the trial judge, who said that

respect "for those persons charged with the responsibility of determining the zoning within their community" required him to abstain from interceding "absent of showing that there has been an unreasonable and arbitrary action taken by those same authorities".

I would reverse the Court of Appeals and affirm the trial judge's finding that the plaintiffs have not "maintained their burden as required and a judgment for the defendant may enter".

SWAINSON and LINDEMER, JJ., took no part in the decision of this case.